IVETTE ACEVEDO SANTIAGO, demandante y recurrida, *v.* WESTERN DIGITAL CARIBE, INC. ET ALS., demandados y recurrentes.

*Número:* RE-91-129 *Resuelto:* 21 de marzo de 1996

454

456

*Graciela J. Belaval*, de *Martínez Odell, Calabria & Sierra*, abogada de la parte recurrente; *Martín González Vázquez* y *Carlos Barreto Ríos*, abogados de la parte recurrida.

EL JUEZ PRESIDENTE SEÑOR ANDRÉU GARCÍA emitió la opinión del Tribunal.

Recurre ante nos la demandada, Western Digital Caribe, Inc., para solicitar que revisemos la resolución emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce (Hon. Felipe Ortiz Ortiz, Juez), en la que declaró sin lugar la moción que presentara la demandada para desestimar la reclamación en daños y perjuicios por libelo. Igualmente, solicita que revoquemos la sentencia sumaria parcial decretada a favor de la parte demandante mediante la cual resolvió que los procedimientos ante el Negociado de Seguridad de Empleo y el Negociado de Normas de Trabajo eran dispositivos de la controversia sobre despido injustificado.

Examinados los alegatos de las partes, entendemos que los errores fueron cometidos y revocamos.

I

La Sra. Ivette Acevedo Santiago fue despedida de su empleo en Western Digital Caribe, Inc. (en adelante Western Digital) por alegadamente haber cobrado por horas no trabajadas.

La demandante recurrió al Negociado de Seguridad de Empleo, adscrito al Departamento del Trabajo y Recursos Humanos (en adelante Departamento), en reclamo de beneficios por desempleo. A solicitud del Negociado, la demandada acudió al Departamento para exponer el cuadro fáctico que dio lugar al despido. Aunque la solicitud de la demandante fue originalmente denegada, esta determinación fue posteriormente revocada por un árbitro, quien determinó que la señora Acevedo Santiago no incurrió en conducta impropia con intención de perjudicar a la empresa y que, por lo tanto, era merecedora de beneficios por desempleo.

Simultáneamente, la demandante recurrió al Negociado

de Normas de Trabajo, también adscrito al Departamento, el cual luego de realizar la investigación correspondiente le reclamó a Western Digital, a nombre de la demandante, una mesada ascendente a $1,048.25 por despido injustificado al amparo de la Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. sec. 185a *et seq.*). Además, apercibió a Western Digital de que su renuencia al pago de la mesada daría inicio a los trámites judiciales pertinentes.

Ante la inacción de Western Digital la señora Acevedo Santiago presentó una demanda por daños y perjuicios basados en libelo y difamación, otros daños y en reclamo de una partida por la suma de mil cuarenta y ocho dólares con veinticinco centavos ($1,048.25) en concepto de mesada por despido injustificado al amparo de la Ley Núm. 80, *supra.* Por su parte, Western Digital presentó una reconvención en reclamo de los salarios percibidos por la demandante que dieron lugar a su despido, más intereses legales, costas y honorarios.

Acto seguido, Western Digital presentó una moción de desestimación en cuanto al reclamo por libelo y difamación, fundamentada en que la demandante no expuso una reclamación que justificara la concesión de un remedio. Agregó que las comunicaciones en controversia eran privilegiadas.

La demandante se opuso y solicitó que se decretara sentencia sumaria parcial en relación con la partida correspondiente a la mesada por despido injustificado, por entender que las determinaciones realizadas por el Negociado de Seguridad de Empleo y el Negociado de Normas de Trabajo disponían de la controversia y constituían cosa juzgada para el tribunal.

El foro de instancia avaló la posición de la demandante y declaró sin lugar la moción de desestimación al resolver que la demanda exponía una reclamación legítima por libelo. No hizo mención alguna sobre la condición privilegiada de las comunicaciones.

A su vez, concedió la sentencia sumaria parcial y ordenó a Western Digital el pago de la mesada por mediar un laudo de arbitraje que disponía de la reclamación.([1])

Denegada su moción de reconsideración, Western Digital acudió a este Foro para solicitar la revisión de la sentencia sumaria parcial y resolución. Acordamos revisar y así procedemos.

## II

En reiteradas ocasiones hemos señalado que, como regla general, un obrero contratado por tiempo indeterminado, que es despedido sin causa justificada, sólo tiene derecho al remedio que provee la Ley Núm. 80, *supra; Porto y Siurano v. Bentley P.R., Inc.*, 132 D.P.R. 331 (1992); *Arroyo v. Rattan Specialties, Inc.*, 117 D.P.R. 35, 65 (1986); *Rivera v. Security Nat. Life Ins. Co.*, 106 D.P.R. 517, 527 (1977). No obstante, en *Rivera v. Security Nat. Life Ins. Co.*, supra, reconocimos que el remedio exclusivo de la Ley Núm. 80, *supra*, no excluye una causa de acción por responsabilidad civil de un patrono si esta reclamación emana de una fuente independiente al despido del empleado. Posteriormente, en *Arroyo v. Rattan Specialties, Inc.*, supra, pág. 65, tuvimos la oportunidad de delimitar el alcance de la excepción a la norma general y expusimos que el obrero no puede estar limitado al remedio exclusivo de la Ley Núm. 80, *supra*, cuando el despido se hace con el propósito —o tiene el efecto— de frustrar o subvertir una clara política pública. Aclaramos que la Ley Núm. 80, *supra*, "no puede operar para privar al obrero de los remedios apropiados para vindicar eficazmente sus derechos

---

([1]) Debemos aclarar que la determinación del Negociado de Seguridad de Empleo fue erróneamente catalogada como laudo, ya que no corresponde a un arbitraje. A pesar de que el proceso, en su etapa apelativa, es atendido por un funcionario denominado árbitro, éste no deriva su autoridad de un acuerdo de sumisión o convenio entre las partes.

constitucionales". *Arroyo v. Rattan Specialties, Inc.*, supra, pág. 65.

En este caso, la demandante recurrida acudió a los tribunales para reclamar indemnización por despido injustificado al amparo de la Ley Núm. 80, *supra*. Además, entabló una acción en daños y perjuicios por libelo basada en la publicación difamatoria de la comunicación de su despido.

En Puerto Rico las acciones por libelo se conducen de acuerdo con lo dispuesto por la Ley de Libelo y Calumnia, Ley de 19 de febrero de 1902 (32 L.P.R.A. sec. 3141 *et seq.*), y por el Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141. *Ojeda v. El Vocero de P.R.*, 137 D.P.R. 315 (1994). La acción de libelo se cimenta, a su vez, sobre el imperativo constitucional del derecho que ostenta toda persona "a protección de ley contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar." Art. II, Sec. 8, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1982, pág. 292. Por consiguiente, en vista de la protección constitucional a la honra y la reputación, toda reclamación en daños y perjuicios por libelo que emana de los sucesos que dieron lugar a un despido injustificado configura indefectiblemente una causa de acción independiente al despido.

## III

En *Villanueva v. Hernández Class*, 128 D.P.R. 618, 640–641 (1991), aclaramos que nuestra Ley de Libelo y Calumnia había sido modificada significativamente por los preceptos constitucionales incorporados a nuestro ordenamiento en 1952 que albergan la libertad de palabra y de prensa, Sec. 4 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico, *supra*, y la jurisprudencia interpretativa del Tribunal Supremo federal sobre la Primera Enmienda. Señalamos que aunque su vigencia está condicionada a dichos preceptos constitucionales, ello "no debe constituir impedimento para que nos esfor[c]emos por

darle efecto a las disposiciones de nuestra Ley de Libelo y Calumnia que aún tienen vigencia ...". Íd., pág. 642 esc. 13.

■ En consecuencia, la acción por difamación se ha convertido en "híbrida", que constituye una acción torticera intencional en cuanto a figuras públicas, y una acción de daños y perjuicios cuando el sujeto perjudicado es una persona privada. *Ojeda v. El Vocero de P.R.*, supra, pág. 329.

■ Para que una persona privada prospere en una reclamación por libelo es necesario que establezca que la publicación de una comunicación, que se reputa falsa y difamatoria, le causó daños y que se debió a conducta negligente. El concepto "negligencia" se define según el ámbito reconocido en el campo de la responsabilidad extracontractual. *Ojeda v. El Vocero de P.R.*, supra; *Villanueva v. Hernández Class*, supra. Por su parte, el elemento de publicación se configura cuando la expresión difamatoria es comunicada a una tercera persona. *Porto y Siurano v. Bentley P.R., Inc.*, supra, págs. 346–347.

En el caso ante nos, la demandante recurrida fundamenta su causa de acción por libelo sobre la notificación por escrito que le cursó su patrono en la cual le comunicó las razones para su despido. Entiende ella que el propósito de esta carta era difundir información falsa y difamatoria a terceros como, por ejemplo, potenciales patronos y los tribunales. La única alegación concreta indicativa de la publicación de la carta, o sea, de su comunicación a terceras personas, es el señalamiento que hace el patrono en la carta de despido en cuanto a que ésta sería incorporada al récord personal de la demandante.

En *Porto y Siurano v. Bentley P.R., Inc.*, supra, nos enfrentamos a una controversia similar relacionada con una carta de despido. El contenido de la carta fue discutido entre el jefe y el empleado, en presencia de la Administradora de Personal de la compañía. Resolvimos, entonces,

que ante esos hechos no se configuraba el elemento de "publicación" de la carta de despido. Enfatizamos que es completamente lógico y razonable que el jefe de personal de una empresa "esté al tanto de las personas que se reclutan y de los empleados que se despiden de la misma". Íd., pág. 352.

■ Conscientes de nuestras expresiones en *Villanueva v. Hernández Class*, supra, antes citadas, interpretamos la Ley de Libelo y Calumnia con el fin de poner en justa perspectiva sus disposiciones. A estos fines, interpretamos conjuntamente las Secs. 4 y 5 de la Ley de Libelo y Calumnia, 32 L.P.R.A. secs. 3144([2]) y 3145,([3]) a la luz del derecho común anglosajón, y reconocimos que aun si asumiéramos, para propósitos de argumentación, que la carta de despido contiene información falsa y difamatoria y que cumple con el elemento de publicación, ésta no serviría de base a una acción por libelo por ser la publicación privilegiada. *Porto y Siurano v. Bentley P.R., Inc.*, supra, pág. 352.

■ Aclaramos que este privilegio es condicional, por lo que se puede renunciar si se abusa de él. Esbozamos, a modo de ilustración, que en el ámbito obrero-patronal se reconoce el privilegio restringido en las comunicaciones siguientes:

---

([2]) Sec. 4:

"No se tendrá por maliciosa, ni como tal se considerará la publicación que se hace en un procedimiento legislativo, judicial, u otro procedimiento cualquiera autorizado por la ley. No se presumirá que es maliciosa la publicación que se hace:

"Primero: En el propio desempeño de un cargo oficial;

"Segundo: En un informe justo y verdadero de un procedimiento judicial, legislativo u oficial, u otro procedimiento cualquiera, o de algo dicho en el curso de dichos procedimientos;

"Tercero: A un funcionario oficial, apoyada en causa probable, con la intención de servir al procomún, o de conseguir remedio a un perjuicio hecho a un particular."

([3]) Sec. 5:

"Se presumirá que existe malicia en cualquier comunicación o escrito infamatorio o calumnioso que se dirija a otra persona que no sea un pariente dentro del tercer grado, o a una persona a quien el autor tenga bajo su tutela, o cuando dicha comunicación se cruce entre personas que tengan negocios en sociedad, u otra asociación semejante."

... comunicaciones del "patrono" a gerentes o supervisores de un empleado despedido, informándoles las razones del despido; *comunicaciones hechas a patronos prospectivos informándoles la razón del despido del empleado*; manifestaciones hechas en las hojas de evaluación de rendimiento de un empleado; dando información de referencia acerca de un empleado a otros patronos potenciales; comunicaciones entre supervisores y empleados de personal. (Énfasis suplido.) *Porto y Siurano v. Bentley P.R., Inc.*, supra, págs. 354–355.

■ Nuestras expresiones en *Porto y Siurano v. Bentley P.R., Inc.*, supra, aún conservan su vigencia y disponen del asunto ante nuestra consideración. Ciertamente la incorporación de la carta de despido al expediente personal de la demandante no puede dar lugar a la concesión de un remedio por libelo.

■ De igual modo, no podemos obligar a un patrono a responder civilmente por alegaciones abstractas y especulativas, basadas en la potencial difusión de una carta de despido por su mera existencia. Como reseñáramos anteriormente, incluso si se materializara la potencial divulgación de la carta a un patrono prospectivo, esta comunicación gozaría del privilegio condicional.

Además, sería irrazonable penalizar al patrono por extender al empleado una sucinta notificación escrita en la que expone las razones que motivaron el despido.

Resulta pertinente agregar que, de haberse utilizado la carta de despido en los correspondientes procesos administrativos y judiciales, lo cual no se evidencia en los documentos presentados, esta comunicación a una tercera persona no daría lugar a una acción por libelo por ser estos procesos iniciados por la propia demandante y por venir compelido el demandado a cumplir con las exigencias documentales de los foros pertinentes, pudiendo exponerse a penas severas por su incumplimiento. Véase, a modo de ejemplo, 29 L.P.R.A. sec. 714(c).

En vista de que no se configuró el elemento de publicación, sumado al hecho de que la comunicación intracorpo-

rativa de la carta de despido es condicionalmente privilegiada, y que, en fin, la demanda no expone una reclamación que justifique la concesión de un remedio, 32 L.P.R.A. Ap. III, R. 10.2, revocamos la resolución emitida por el tribunal de instancia en la cual declaró sin lugar la moción de desestimación presentada por la demandada.

## IV

Resta evaluar si las determinaciones del Negociado de Seguridad de Empleo y del Negociado de Normas de Trabajo disponen de la reclamación judicial al amparo de la Ley Núm. 80, *supra*.

En nuestro acervo jurídico la presunción de cosa juzgada se rige por los postulados del Derecho Civil. Para reconocer fuerza de cosa juzgada a una sentencia o decisión administrativa es necesario que "concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron". Art. 1204 del Código Civil, 31 L.P.R.A. sec. 3343. Véase *Lausell Marxuach v. Díaz de Yáñez*, 103 D.P.R. 533, 535 (1975). También hemos reconocido la figura jurídica del "impedimento colateral por sentencia" como una modalidad de la doctrina de cosa juzgada en la cual no resulta necesaria la identidad de causas. *A & P Gen. Contractors v. Asoc. Caná*, 110 D.P.R. 753 (1981).

Se constituye el requisito de identidad de causas "cuando la nueva acción estuviera como embebida en la primera, o fuese consecuencia inseparable de la misma ...". J.M. Manresa y Navarro, *Comentarios al Código Civil español*, 6ta ed. rev., Madrid, Ed. Reus, 1967, T. VIII, Vol. 2, págs. 303–304, citado con aprobación en *Mercado Riera v. Mercado Riera*, 100 D.P.R. 940, 951–952 (1972). Para cumplir con el requisito de identidad de cosas "basta que se refiera al mismo asunto, aunque en el uno se abordase totalmente y sólo parcialmente en el otro ...". Q.M. Scaevola, *Código*

*Civil*, 2da ed., Madrid, Ed. Reus, 1958, T. XX, Vol. 1, pág. 534, citado con aprobación en *Rodríguez Rodríguez v. Colberg Comas*, 131 D.P.R. 212 (1992).

 En cuanto a la identidad de las personas de los litigantes, este requisito se rige por la doctrina de mutualidad. El propio Art. 1204 de nuestro Código Civil, *supra*, dispone que "[s]e entiende que hay identidad de personas siempre que los litigantes del segundo pleito sean causahabientes de los que contendieron en el pleito anterior, o estén unidos a ellos por vínculos de solidaridad ...". Esta disposición se complementa por lo pautado en el Art. 421 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 1793, que en lo pertinente establece:

> El efecto de una sentencia o decreto definitivo en una acción o un procedimiento especial ante un tribunal o un juez de Puerto Rico o de los Estados Unidos con jurisdicción para pronunciar sentencia o decreto es como sigue:
>
> . . . . . . . .
>
> (2) En los demás casos, el fallo o decreto, en cuanto a la materia directamente juzgada, será concluyente entre las partes y sus sucesores en interés por título adquirido posteriormente al comienzo de la acción o del procedimiento especial, las cuales estuvieren litigando por la misma cosa, bajo el mismo título y en el mismo carácter, siempre que tuvieren noticia expresa o tácita de estarse substanciando la acción o procedimiento.

 En *Pagán Hernández v. U.P.R.*, 107 D.P.R. 720 (1978), dispusimos de toda interrogante en cuanto a la aplicabilidad de la doctrina de cosa juzgada a procedimientos administrativos. Reconocimos que en este ámbito su aplicación tiene tres (3) vertientes, a saber: su aplicación intraagencial, interagencial y entre las agencias y los tribunales. Íd., pág. 733. Aclaramos en aquel entonces que *"la aplicabilidad de la doctrina en el campo administrativo es flexible y depende de la naturaleza de la cuestión que se plantea en el ámbito judicial"*. (Énfasis suplido.) Íd., pág. 735. Aprovechamos para exceptuar de la aplicación rígida

de la doctrina aquellos casos permeados de consideraciones de orden público. Íd., pág. 736.

## V

En el caso ante nuestra consideración no se cumple con el requisito de la identidad de partes entre el proceso administrativo ante el Negociado de Seguridad de Empleo y la presente acción judicial, por lo que no es de aplicación la doctrina de cosa juzgada o su modalidad de impedimento colateral. Veamos.

El Negociado de Seguridad de Empleo fue creado[4] con el propósito de poner en vigor la Ley de Seguridad de Empleo de Puerto Rico, Ley Núm. 74 de 21 de junio de 1956 (29 L.P.R.A. sec. 701 *et seq.*), cuya finalidad, según surge de la Sec. 1, es "promover la seguridad de empleos facilitando las oportunidades de trabajo por medio del mantenimiento de un sistema de oficinas públicas de empleo y proveer para el pago de compensación a personas desempleadas por medio de la acumulación de reservas". 29 L.P.R.A. sec. 701. Esta ley establece los requisitos para cualificar para beneficios por desempleo y los parámetros para determinar las contribuciones que deben pagar los patronos para sufragar el fondo de desempleo.

Acorde con sus funciones y ámbito de autoridad, el Negociado de Seguridad de Empleo atendió el reclamo de beneficios por desempleo de la demandante recurrida y otorgó los beneficios solicitados al concluir que la señora Acevedo Santiago no había incurrido en conducta impropia con intención de perjudicar a la empresa. En este procedimiento las partes fueron la señora Acevedo Santiago y el Secretario del Trabajo y Recursos Humanos, representado por el Negociado de Seguridad de Empleo. La comparecen-

---

[4] 29 L.P.R.A. sec. 712.

cia del patrono al procedimiento administrativo ante el Negociado no fue en calidad de parte ni a modo contencioso o adversativo, sino como testigo en cumplimiento de una citación del Negociado de Seguridad de Empleo en virtud de la Sec. 15(c) de la Ley de Seguridad de Empleo de Puerto Rico, 29 L.P.R.A. sec. 715(c). A pesar de que el patrono disfruta del derecho a ser notificado sobre los procesos que impliquen a un ex empleado, esto no lo convierte en parte. Cabe mencionar que el Secretario del Trabajo y Recursos Humanos no se encuentra en relación mutua con el patrono, ni representa los intereses de éste en estos procesos administrativos. Véase *Negrón v. C.I.T. Fin. Serv.*, 111 D.P.R. 657, 661 (1981)

La demandante señala que la ley es clara al disponer, en su Sec. 6(j), que "[n]inguna determinación o decisión final *con respecto a derechos de beneficios* estará sujeta a ser atacada colateralmente por una unidad de empleo independientemente de que haya habido o no una notificación". (Énfasis suplido.) 29 L.P.R.A. sec. 706(j). No obstante, son ilustrativas nuestras expresiones en *Rodríguez Oyola v. Machado Díaz*, 136 D.P.R. 250 (1994), en las cuales indicamos que cuando la naturaleza de lo planteado en el foro administrativo es distinta a la dilucidada en el recinto judicial, lo razonable es no aplicar la doctrina de cosa juzgada.

Naturalmente, el ámbito de acción del Negociado de Seguridad de Empleo está limitado a las determinaciones de beneficios de desempleo y a las acciones derivadas de la administración del fondo de desempleo.

De lo contrario, si un patrono viniese obligado por una determinación del Negociado de Seguridad de Empleo, los procedimientos administrativos sumarios para conceder beneficios por desempleo se tornarían en una especie de juicios en su fondo. Este absurdo se acentuaría por el hecho de que el patrono no está expuesto a pérdida econó-

mica alguna ante una determinación de dicho negociado, debido a que los beneficios por desempleo provienen del fondo de reserva y no de los recursos del patrono. En consideración a la flexibilidad con que debe aplicarse la doctrina de cosa juzgada en el ámbito administrativo, debemos rechazarla cuando el demandado no ha tenido los incentivos para litigar completa y rigurosamente las controversias surgidas en el primer proceso. *A & P Gen. Contractors v. Asoc. Caná*, supra, pág. 760.

## VI

■ A diferencia del proceso adjudicativo del Negociado de Seguridad de Empleo, el proceso ante el Negociado de Normas de Trabajo es investigativo, que puede dar inicio a una reclamación por despido injustificado en nombre del ex empleado. Por lo tanto, ante la ausencia de una decisión adjudicativa resulta inmeritorio considerar la aplicabilidad de la doctrina de cosa juzgada.

■ Las facultades de dicho negociado se circunscriben a investigar reclamos de despido injustificado. Una vez la investigación arroja resultados favorables al ex empleado, el Negociado de Normas de Trabajo procede a reclamar al patrono, en nombre del obrero despedido, la mesada que dispone el Art. 1 de la Ley Núm. 80, *supra*, 29 L.P.R.A. sec. 185a. Ante la negativa del patrono, el obrero puede acudir al tribunal a nombre propio o puede recurrir al mencionado negociado para que lo represente en su reclamo judicial.

De la carta que cursara el árbitro del Negociado de Normas de Trabajo a la demandada recurrente surge diáfanamente que su reclamo era el resultado de un proceso investigativo, por lo que le apercibía de una futura reclamación judicial a tenor con los procedimientos que dispone la Ley Núm. 80, *supra*.

Incluso la propia demandante recurrida reconoce que la determinación del Negociado de Normas de Trabajo no dispone de la controversia del despido injustificado. Alegato de la recurrida, pág. 23. Se limita a cuestionar la sabiduría legislativa al bifurcar el procedimiento y nos insta a que en este caso reconozcamos una excepción, puesto que el efecto acumulativo de dos (2) procedimientos distintos al amparo de diversas disposiciones de ley debería ser suficiente para disponer de la controversia sobre el despido. En consideración a la naturaleza de los procesos y sus propósitos, y nuestras pautas sobre la doctrina de cosa juzgada en el ámbito administrativo, sus argumentos no nos persuaden.

Es evidente que existe una controversia real en cuanto a los hechos que dieron lugar al despido de la demandante recurrida. Regla 36.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Por consiguiente, el tribunal de instancia no se encontraba en posición de dictar la sentencia sumaria parcial mediante la cual dispuso del reclamo por despido injustificado al amparo de la Ley Núm. 80, *supra*.

## VII

Por los fundamentos antes expuestos, *se revocará la sentencia sumaria parcial y resolución emitidas por el tribunal de instancia, Sala de Ponce, se desestimará la causa de acción en daños y perjuicios por libelo, y se devolverá el caso al Tribunal de Primera Instancia para procedimientos ulteriores conforme a lo aquí resuelto.*

El Juez Asociado Señor Fuster Berlingeri disintió respecto a la parte III de la opinión y, por ende, de lo pertinente en la parte VII, por las razones expuestas en su disidencia en *Porto y Siurano v. Bentley P.R., Inc.*, 132 D.P.R. 331 (1992).