*323 Opinión disidente de la
Jueza Asociada Señora Fiol Matta.
Disiento. Hoy, una mayoría del Tribunal rehúsa hacerle justicia a un exmiembro de la Policía de Puerto Rico cuya pensión por incapacidad ocupacional fue suspendida indebidamente. Por entender que en este caso no procede aplicar la doctrina de cosa juzgada, revocaría la decisión del Tribunal de Apelaciones y, al amparo de nuestra deci-sión en Rodríguez v. Retiro, 159 D.P.R. 467 (2003), reinsta-laría de manera prospectiva la pensión del señor Pérez Droz.
I
El Sr. Everilde Pérez Droz trabajó como agente de la Policía de Puerto Rico, alcanzando los años de servicio acreditados en la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura. El 7 de agosto de 1966, después de trabajar por 11 años para dicha institución, sufrió un accidente automovilístico en el que sufrió un trauma en la cabeza. Como consecuencia de ello, padeció de varias condiciones emocionales, incluyendo an-siedad y neurosis postraumática. El Fondo del Seguro del Estado relacionó su accidente con el empleo. Acto seguido, el 23 de mayo de 1969, el Superintendente de la Policía de Puerto Rico solicitó a la Administración una pensión por incapacidad ocupacional a nombre del señor Pérez Droz. El 23 de enero de 1970, la Administración aprobó dicha pen-sión a partir del 1 de enero de 1970 “hasta tanto fuese repuesto al servicio”.(1)
*324 Varios años después, la Administración llevó a cabo una investigación en la que concluyó que el peticionario se de-dicaba a labores no gubernamentales remuneradas. El 12 de septiembre de 1991, la Administración le notificó que le suspendería la pensión efectivo el 30 de dicho mes. El 10 de octubre, el peticionario solicitó reconsideración. El 9 de marzo de 1992, la agencia le notificó una reclamación por cobro de lo indebido, ascendente a $23,093.75, calculada del 1 de julio de 1986 al 15 de septiembre de 1991. Dicho período responde al tiempo transcurrido entre una en-mienda hecha a la Ley de Retiro en 1986, que prohibía a los beneficiarios de una pensión por incapacidad ocupacio-nal llevar a cabo trabajo remunerado que igualara o supe-rara lo pagado por dicha pensión, y la fecha en que la agen-cia decidió suspender los beneficios al señor Pérez Droz. El 6 de abril de 1992, el peticionario presentó un nuevo es-crito de reconsideración. El 17 de mayo de 1996, la Admi-nistración se reafirmó en su decisión original.
Inconforme con la determinación de la Administración, el 13 de junio de 1996 el señor Pérez Droz apeló a la Junta de Síndicos de dicha agencia, la que confirmó la determinación. Posteriormente, el señor Pérez Droz pre-sentó una petición de certiorari a este Tribunal, la que fue declarada “no ha lugar” por “craso incumplimiento con el Reglamento.”(2) Dicha determinación advino final y firme.(3)
Por otro lado, la agencia continuó con sus gestiones de cobro, pero el 28 de agosto de 2000 el Tribunal de Primera Instancia paralizó los procedimientos a raíz de la presen- *325 tación de una solicitud de quiebra ante el Tribunal Federal por parte del señor Pérez Droz. En 2003, en Rodríguez v. Retiro, este Tribunal resolvió que la interpretación que ha-bía hecho la Administración de los Sistemas de Retiro a partir de la enmienda de 1986 no aplicaba a las pensiones por incapacidad autorizadas antes de la aprobación de dicha enmienda. Es decir, que la agencia erró al darle efecto retroactivo a los cambios aprobados en 1986.
Ante este panorama y poco después de la publicación del citado caso, el 20 de marzo de 2004, el señor Pérez Droz solicitó la restitución de los beneficios suspendidos. La Ad-ministración denegó dicha solicitud el 19 de abril de 2005. El 23 de mayo de ese año, el peticionario apeló a la Junta de Síndicos de la agencia. El 20 de agosto de 2008, la Junta celebró una vista de conferencia y el peticionario presentó su posición por escrito. En síntesis, el señor Pérez Droz alegó que, conforme la determinación tomada en Rodríguez v. Retiro, la decisión de la agencia de suspender sus bene-ficios en 1991, al aplicar retroactivamente la enmienda de 1986, fue un error de derecho. Es decir, solicitó que se co-rrigiera la situación aplicándose la doctrina adoptada en aquel caso y se le restituyera la pensión otorgada en 1970.
El 15 de jimio de 2009, la Junta de Síndicos confirmó la decisión de la Administración de suspender los pagos de la pensión e instar una acción por cobro de lo indebido. La Junta concluyó que las controversias planteadas por el se-ñor Pérez Droz ya habían sido adjudicadas previamente, por lo que aplicaba la doctrina de cosa juzgada.(4)
Inconforme, el peticionario recurrió al Tribunal de Ape-laciones alegando que la Junta de Síndicos de la Adminis-tración de los Sistemas de Retiro erró al aplicar la doctrina de cosa juzgada para denegar su solicitud de reinstalación. El foro intermedio confirmó la determinación de la agencia *326 aplicando las figuras de cosa juzgada e impedimento cola-teral por sentencia.
Inconforme con la determinación del Tribunal de Apela-ciones, el señor Pérez Droz acudió ante este Tribunal. Se-gún él, la aprobación original de su pensión por parte de la Administración de los Sistemas de Retiro estaba sujeta a la ley vigente en 1970. Es decir, que la aplicación retroac-tiva en 1991 de la enmienda a la Ley de Retiro en 1986, mediante la cual se le suspendieron los beneficios única-mente porque se dedicaba a una ocupación no guberna-mental, sin llevar a cabo exámenes médicos que certifica-ran que ya no estaba incapacitado y sin ofrecerle una reposición como proveía la Ley en 1970, no debe prevalecer. Además, enfatiza que, dado que la decisión anterior de sus-penderle los beneficios de la pensión fue un error de dere-cho, ello anula la presunción de cosa juzgada. En particular, alega que la representación legal deficiente que tuvo durante la primera parte de esta controversia choca con la doctrina de cosa juzgada que requiere que la persona contra quien se emplea la figura haya tenido una oportunidad adecuada para presentar su caso. Finalmente, alega que el derecho a recibir su pensión por incapacidad ocupacional, la que fue indebidamente suspendida en 1991, está reves-tido de un alto interés público, por lo cual se configura una excepción a la aplicación de la doctrina de cosa juzgada.
Por su parte, la Procuradora General, en representación de la Administración, sostiene que no se debe aplicar al caso del peticionario nuestra determinación en Rodríguez v. Retiro, resuelto en 2003, pues este caso fue discutido por primera vez por el peticionario cuando “[e]l caso cobró vida nuevamente al emitirse la decisión de Rodríguez Sierra en el 2003 y el recurrente reclamar que, a base de ésta, no procedía la suspensión de los beneficios”.(5) Los recurridos *327 plantean que el objetivo de la doctrina de cosa juzgada de darle finalidad a los pleitos debe prevalecer. El 28 de mayo de 2010, expedimos el auto de certiorari.
II
En Rodríguez v. Retiro nos enfrentamos a la interro-gante de si la Ley Núm. 61 de 1 de julio de 1986, que enmendó el Artículo 11 de la Ley de Retiro, 3 L.P.R.A. sec. 771 (ed. 1978), tenía efecto retroactivo, como sostenía la Administración de los Sistemas de Retiro. Dicha enmienda “autorizaba a la Administración a suspender automática-mente el pago de la pensión por incapacidad sin la necesi-dad de un examen médico en aquellos casos en los cuales el pensionado estuviese trabajando y devengando un salario igual o mayor al importe de la pensión”. (6)
Los hechos de ese caso son evidentemente similares a los de la controversia ante nuestra consideración. En esa ocasión, el demandante, quien se desempeñaba como poli-cía, sufrió un accidente que le incapacitó. Posteriormente, solicitó y obtuvo una pensión por incapacidad ocupacional al amparo de la Ley de Retiro, la que finalmente fue apro-bada indefinidamente en 1977. Es decir, obtuvo la misma antes de que se aprobaran las enmiendas de 1986. Según explicamos, “[l]a ley entonces no prohibía, al menos no sur-gía del texto, el que una persona pensionada por incapaci-dad pudiera laborar en la empresa privada desempeñando funciones distintas a las que realizaba al momento de su incapacidad”. (7) Por el contrario, lo único que establecía la ley era que el pensionado se sometería a exámenes médicos periódicos para determinar que continuaba la incapacidad. Por lo tanto, para que la Administración suspendiera los beneficios de la pensión, tenía que demostrar que la inca- *328 pacidad ya no existía y no se justificaba la continuación de los beneficios. No obstante, en 1994, la agencia descubrió que el demandante se dedicaba a labores remuneradas mientras recibía los beneficios de la pensión por incapaci-dad ocupacional. Por lo tanto, decidió suspenderle la pen-sión e instó una acción en cobro de dinero por los pagos hechos entre 1986, fecha de vigencia de la enmienda que prohibía que los pensionados trabajaran por una remune-ración mayor a la pensión, y la fecha de la efectividad de la suspensión. La Junta de Síndicos de la agencia confirmó la determinación.
Tras considerar la controversia, resolvimos que la apli-cación retroactiva de las enmiendas de 1986 perjudicaba derechos adquiridos. Por lo tanto, dicha aplicación era improcedente.(8) Particularmente en cuanto a los derechos relacionados a una pensión, hicimos referencia a la norma establecida en Bayrón Toro v. Serra, 119 D.P.R. 605 (1987), manifestando lo siguiente:
[U]na vez el empleado se ha retirado, su pensión no está sujeta a cambios o menoscabos que resulten de posteriores enmiendas legislativas a la Ley de Retiro, supra. Aunque nuestras expresiones fueron únicamente en cuanto a las pen-siones de retiro y [a] claramos que no nos manifestamos sobre algún otro tipo de pensión de naturaleza diferente, como podría[n] ser las de rango o mandato constitucional... no cabe duda que el mismo razonamiento es de aplicación al caso que nos ocupa.(9)
En virtud de todo lo antes expuesto, resolvemos que a la luz de la doctrina de derechos adquiridos, una vez el empleado se ha retirado o incapacitado, su pensión no está sujeta a cam-bios o menoscabos que resulten de posteriores enmiendas le-gislativas a la Ley de Retiro, supra. Por consiguiente, la en-mienda al Art. 11 de la Ley de Retiro de 1986, supra, no podría ser aplicable a Rodríguez Sierra. Al ser inaplicable dicha en-mienda, era irrazonable suspender los pagos de la pensión. El *329 deber de la Administración era someter al pensionado a los exámenes médicos requeridos por ley y, de determinarse que había cesado la incapacidad, continuar entonces con el proceso para su reubicación. De otra manera, no podría concluir que hubo cobro indebido de pensión.(10)
De lo anterior se deduce inequívocamente que la prác-tica de la Administración de suspender automáticamente pensiones y demandar en cobro de dinero a personas cuyas pensiones fueron otorgadas antes de la vigencia de las en-miendas a la Ley de Retiro en 1986, por el mero hecho de estar trabajando por una remuneración, es contraria a derecho. Lo anterior es cónsono con nuestros pronuncia-mientos recientes acerca de los derechos adquiridos. En Hernández, Romero v. Pol. de P.R., 177 D.P.R. 121, 145-146 (2009), manifestamos que un derecho adquirido es aquel “que se encuentra definitivamente incorporado al pa-trimonio de una persona y que como regla general han [sic] de ser respetados [sic] por las nuevas leyes”. Por lo tanto, [u]n derecho adquirido se incorpora dentro del patrimonio del titular del derecho y está protegido constitucional-mente frente a cualquier gestión gubernamental que pre-tenda intervenirlo.(11) En ese caso resolvimos que el dere-cho de escoltas de los exgobernantes era un “derecho adquirido constitucionalmente protegido”.(12) Lo que nos corresponde determinar ahora es si el hecho de que hu-biese advenido final y firme la determinación de suspender los beneficios al señor Pérez Droz antes de que se resol-viera Rodríguez v. Retiro impide que se le dé efecto en este caso a esa decisión, por virtud de la doctrina de cosa juzgada.
*330 III
La doctrina de cosa juzgada, establecida en el Artículo 1204 del Código Civil,(13) evita que una controversia sea litigada nuevamente cuando ya hubo una resolución defi-nitiva de la misma mediante determinación final y firme. Hemos resuelto que “[e]n nuestro acervo jurídico la pre-sunción de cosa juzgada se rige por los postulados del De-recho Civil”.(14) Para que dicha doctrina aplique, hace falta “la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron”.(15) Esta figura cumple con dos importantes objetivos. En primer lugar, poner fin a las cuestiones litigiosas. En segundo lugar, no someter a un ciudadano a las molestias de litigar la misma causa después de que ha habido una adjudica-ción en los méritos.(16) Sin embargo, los tribunales se han negado a aplicar en forma inflexible la defensa de cosa juz-gada, especialmente si involucran consideraciones de orden público.(17) Hemos resuelto que “si la aplicación rigurosa de [esta doctrina] derrotaría en la práctica un derecho per-meado en alguna forma del interés público, los tribunales se inclinar[án] hacia la solución que garantice cumplida justicia, en lugar de favorecer en forma rígida una ficción de ley que obedece fundamentalmente a un principio de conveniencia y orden procesal”.(18) En otras palabras, la re-gla no es absoluta y debe siempre considerarse conjunta-mente con el saludable principio de que debe dispensarse justicia en cada caso.(19) Por ejemplo, en Pérez v. Bauzá rehusamos aplicar la doctrina de cosa juzgada, a pesar de *331 que estaban presentes todos los elementos requeridos por dicha figura, por tratarse de una acción de filiación y alimentos. Ahora bien, en casos que versen sobre “relacio-nes puramente privadas entre las partes que no justifican una desviación del efecto normal de la cosa juzgada”,(20) aplicaremos la doctrina.
En Pagán Hernández v. U.P.R. discutimos la aplicación de la doctrina de cosa juzgada, y sus excepciones, en el ám-bito administrativo.(21) Allí explicamos que “[e]l efecto de la doctrina de cosa juzgada, cuando ésta aplica, es que la sen-tencia dictada en un pleito anterior impide que se litiguen en un pleito posterior entre las mismas partes y sobre la misma causa de acción y cosas, las cuestiones ya litigadas y adjudicadas con propiedad en la acción anterior”.(22) En el caso particular de los procedimientos administrativos, resolvimos que la doctrina de cosa juzgada tiene tres ver-tientes: (1) “su aplicación dentro de la misma agencia, a sus propias decisiones”; (2) “su aplicación interagencial-mente, es decir, de una agencia a otra”, y (3) “su aplicación entre las agencias y los tribunales”. (23) En cualquiera de estas circunstancias, hace falta que la agencia actúe “en una capacidad judicial y [resuelva] controversias de hechos ante sí, las cuales las partes han podido litigar en forma oportuna y adecuada”.(24) En esos casos, los tribunales apli-carán la doctrina de cosa juzgada para imponer descanso *332 en la controversia.(25) Ahora bien, “la aplicabilidad de la doctrina en el campo administrativo es flexible y depende de la naturaleza de la cuestión que se plantea en el ámbito judicial”.(26) En particular, cuando la sentencia “cuya revi-sión se intentó pero que no se pudo lograr por razones aje-nas a la voluntad del apelante” o derrotaría los “fines de la justicia, especialmente si se plantean consideraciones de interés público” la flexibilidad será aún mayor.(27) Esto aplica con mayor fuerza cuando se trata de derechos de rango constitucional.(28) Claro está, “[l]a mera invocación de un derecho constitucional frente a una actuación admi-nistrativa no es la llave que automáticamente nos obligue a descartar la presunción de cosa juzgada. Precisa investi-gar las circunstancias de cada caso en particular”.(29) En Pagán Hernández v. U.P.R. rehusamos aplicar la doctrina de cosa juzgada por tratarse del derecho constitucional a la educación. Igual hicimos en Mun. de San Juan v. Bosque Real, S.E. por tratarse de la protección de nuestros recur-sos naturales y el ambiente. Finalmente, hemos insistido en que, para que se aplique la doctrina de cosa juzgada a un procedimiento administrativo, hace falta evaluar “si las partes han podido litigar oportunamente y adecuadamente la controversia presentada en el foro administrativo”.(30)
*333 IV
No cabe duda que la decisión de la Administración de los Sistemas de Retiro de suspender automáticamente la pensión del peticionario al concluir que éste llevaba a cabo trabajo remunerado fue un error de derecho. A dicha con-clusión llegamos en Rodríguez v. Retiro, donde atendimos una situación de hechos casi idéntica a la de autos. Ese hecho no está en disputa. Por el contario, el argumento principal de la agencia, acogido por una mayoría del Tribunal, es que la doctrina de cosa juzgada le impide cambiar su decisión en cuanto a la suspensión de la pensión del señor Pérez Droz. Como hemos visto, la doctrina de cosa juzgada, si bien es de naturaleza sustantiva, tiene un ob-jetivo procesal y no es absoluta. Por el contrario, cede cuando éstan involucrados derechos constitucionales im-portantes y consideraciones de política pública. Además, en el ámbito administrativo, dicha figura opera con mayor flexibilidad.
En el caso de autos, se trata de una pensión por incapa-cidad ocupacional a la que el señor Pérez Droz, quien es una persona de edad avanzada, tiene derecho. Evidente-mente, estamos ante un derecho adquirido que goza de protección constitucional y la controversia no trata exclu-sivamente sobre derecho privado. Privaral señor Pérez Droz de la pensión que nunca se le debió haber cancelado automáticamente en primera instancia, porque la agencia actuó antes de nuestra decisión en Rodríguez v. Retiro, de-rrota el interés público en que nuestros pensionados gocen de los beneficios a los que tienen derecho. Aplicar la doc-trina de cosa juzgada ante estos hechos constituye un ejer-cicio formalista rígido que resulta en un fracaso de la justicia. Nuestra normativa no permite dicho desenlace.(31) *334 En cuanto al remedio a otorgarse en este caso, entiendo que lo más prudente y equitativo era conceder al peticio-nario los beneficios solicitados desde el momento en que éste solicitó la restitución de su pensión.
La Sentencia que hoy emite el Tribunal describe correc-tamente la figura de la cosa juzgada y reconoce que opera una excepción a su aplicación cuando están involucrados asuntos de alto interés público. Sin embargo, una vez con-cluye que hay identidad entre las cosas, las causas, las personas de los litigantes y la calidad en que lo fueron, la Sentencia ignora completamente la discusión de si estamos frente a un asunto de alto interés público; en este caso, la pensión de un exmiembro de la Policía que sufrió un acci-dente ocupacional. Por el contrario, la Sentencia se limita a afirmar, sin discutir ni profundizar, que en el caso de autos no se configura ninguna de las excepciones a la doc-trina de cosa juzgada.(32) Es decir, para el Tribunal, el de-recho del señor Pérez Droz a que se le devuelva una pen-sión que nunca se le debió haber quitado no es un asunto de interés público. De esa forma, hoy triunfa la inflexibili-dad y fracasa la justicia.

 Sentencia del Tribunal de Apelaciones de 30 de noviembre de 2009, pág. 2; Apéndice, pág. 3.

 (Énfasis suplido.) Resolución de 15 de octubre de 1999, Apéndice, pág. 80.

 Entre las alegaciones que hace el peticionario, quien enfatiza la identidad entre los hechos del caso de Rodríguez v. Retiro y el suyo, así como el derecho apli-cable a ambas controversias, está que la razón por la que este Tribunal resolvió dicho caso a favor de Rodríguez Sierra, mientras que su caso fue declarado no ha lugar por incumplimiento craso con nuestro Reglamento, fue producto de una deficiente repre-sentación legal. En apoyo a su alegación nos refiere a In re Rivera Colón, 172 D.P.R. 340 (2007), en el que se suspende del ejercicio de la profesión al primer abogado del señor Pérez Droz por incumplir las órdenes de este Tribunal.

 Conclusión de Derecho Núm. 19, Resolución de la Junta de Síndicos de la Administración de los Sistemas de Retiro, pág. 7; Apéndice, pág. 19.

 Alegato de la parte recurrida, págs. 7-8, Apéndice, pág. 46. Esta postura de la Procuradora General es confusa, pues evidentemente el peticionario tenía que esperar a que se resolviera y publicara Rodríguez v. Retiro para poder citarlo.

 Rodríguez v. Retiro, supra, pág. 470.

 íd.

 Id., pág. 476, citando el Artículo 3 del Código Civil, 31 L.P.R.A. sec. 3.

 (cita omitida.) Rodríguez v. Retiro, supra, pág. 477, citando a Bayrón Toro v. Serra, supra, pág. 615.

 (Énfasis suprimido.) Rodríguez v. Retiro, supra, pág. 477.

 íd., pág. 146.

 íd., pág. 145.

 31 L.P.R.A. sec. 3343.

 Acevedo v. Western Digital Caribe, Inc., 140 D.P.R. 452 (1996).

 31 L.P.R.A. sec. 3343.

 Pérez v. Bauzá, 83 D.P.R. 220 (1961).

 íd., pág. 226.

 (Énfasis suplido.) íd.

 íd.

 Mercado Riera v. Mercado Riera, 100 D.P.R. 940, 953 (1972). En dicho caso, aunque aplicamos la doctrina de cosa juzgada por ser una controversia puramente privada, reafirmamos la norma de que la aplicación de dicha figura cederá a los fines de hacer cumplida justicia o cuando involucra consideraciones de orden público. Id.

 Pagán Hernández v. U.P.R., 107 D.P.R. 720 (1978). Curiosamente, dicho caso también versó sobre una determinación administrativa final y firme, una decisión judicial posterior que afectó positivamente los derechos del demandante, la presencia de derechos de gran importancia y una defensa de cosa juzgada. En este caso, la defensa no prosperó.

 Íd., págs. 732-733.

 Íd., pág. 733.

 Íd., pág. 734.

 Íd.

 (Énfasis suplido.) Íd., pág. 735. Véase además Mun. de San Juan v. Bosque Real, S.E., 158 D.P.R. 743, 770 (2003): “A pesar de lo anterior, la aplicabilidad de la doctrina a los procesos administrativos no es automática y absoluta.”

 (Énfasis suplido.) Pagán Hernández v. U.P.R., supra, pág. 736 y esc. 6.

 Íd., pág. 737.

 Íd., pág. 738.

 Mun. de San Juan v. Bosque Real, S.E., supra, pág. 770, citando a Acevedo v. Western Digital Caribe, Inc., supra, pág. 454.

 Además, hay suficiente información en el expediente como para cuestionar si el peticionario tuvo una oportunidad adecuada para defenderse en el procedi-miento administrativo que le despojó de su pensión.

 Sentencia, pág. 11.