

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Everilde Pérez Droz<br><br>    Peticionario<br><br>       v.<br><br>Administración de los Tribunales<br>Sistemas de Retiro de los Empleados<br>Del Gobierno y la Judicatura<br><br>    Recurrida | Apelación<br><br>2012 TSPR 5<br><br>184 DPR ____ |

Número del Caso: CC-2010-9

Fecha: 10 de enero de 2012

Tribunal de Apelaciones:

      Región Judicial de San Juan, Panel I

Juez Ponente:

          Hon. Luis Roberto Piñero González

Abogado de la Parte Peticionaria:

          Lcdo. Francisco Dávila Vargas

Oficina de la Procuradora General:

             Lcda. Leticia Casalduc Rabell<br>
             Subprocuradora General

             Lcda. Zaira Z. Girón Anadón<br>
             Subprocuradora General

             Lcda. Sylvia Roger-Stefani<br>
             Procuradora General Auxiliar

Materia: Revisión Administrativa Procedente de la Junta de Síndicos

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Everilde Pérez Droz

    Peticionario

      v.

                            CC-2010-9

Administración de los
Sistemas de Retiro de los
Empleados del Gobierno y la
Judicatura

    Recurrida

SENTENCIA

San Juan, Puerto Rico, a 10 de enero de 2012.

En esta ocasión, debemos determinar si es cosa juzgada una resolución final y firme mediante la cual la Junta de Síndicos de la Administración de los Sistemas de Retiro (Junta de Síndicos) confirmó, en 1998, la suspensión de una pensión por incapacidad ocupacional. Por entender que aplica la doctrina de cosa juzgada, confirmamos al Tribunal de Apelaciones, que ordenó la desestimación del presente caso.

I.

El Sr. Everilde Pérez Droz trabajó como agente de la Policía de Puerto Rico y tiene cotizados once años de servicios en la Administración de los

Sistemas de Retiro de los Empleados del Gobierno y la Judicatura (Administración). El 7 de agosto de 1966, el señor Pérez Droz tuvo un accidente automovilístico en el que sufrió un trauma en la cabeza. Consecuentemente, comenzó a padecer de ansiedad y neurosis postraumática. La Corporación del Fondo del Seguro del Estado (C.F.S.E.) relacionó el accidente con el empleo. Por ello, la Administración aprobó al señor Pérez Droz los beneficios de pensión por incapacidad ocupacional, a partir del 1 de enero de 1970, hasta tanto fuese repuesto al servicio.[1]

Posteriormente, la Administración realizó una investigación y encontró que el señor Pérez Droz estaba trabajando en la empresa privada.[2] Así las cosas, el 30 de julio de 1991, la Administración concedió diez días al señor Pérez Droz para que mostrara causa por la cual no se le debían suspender los beneficios de la pensión. Este no respondió. Por consiguiente, el 12 de septiembre de 1991, la Administración le notificó la suspensión de los beneficios de pensión. El señor

---

[1] Esta pensión se concedió al amparo de la derogada Ley Núm. 447 de 15 de mayo de 1951, según enmendada, conocida como la Ley de Retiro de Personal del Gobierno del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. sec. 761 *et seq.* (ed. 1978) (Ley de Retiro). Esta ley imponía como condición para continuar disfrutando de los beneficios de la pensión, que el participante se sometiera a exámenes médicos periódicamente para determinar su estado de salud y grado de incapacidad. Art. 11 de la Ley de Retiro, 3 L.P.R.A. sec. 771 (ed. 1978). En aquel momento, la ley no prohibía expresamente que una persona pensionada por incapacidad laborara en la empresa privada desempeñando funciones distintas a las que realizaba al momento de su incapacidad.

[2] En 1986, el Art. 11 de la Ley de Retiro fue enmendado por la Ley Núm. 61 de 1 de julio de 1986. 3 L.P.R.A. sec. 771. Esto, para autorizar a la Administración a suspender automáticamente el pago de la pensión por incapacidad sin la necesidad de un examen médico en aquellos casos en los cuales el pensionado estuviese trabajando y devengando un salario igual o mayor al importe de la pensión.

Pérez Droz solicitó reconsideración ante la Administración, sin éxito. Al año siguiente, la Administración le notificó haber incurrido en un cobro indebido de pensión por la suma de $23,093.75, por el período en que recibió los mencionados beneficios, entre el 1 de julio de 1986 y el 15 de septiembre de 1991.

Así las cosas, el 6 de abril de 1992, el señor Pérez Droz solicitó nuevamente a la Administración que reconsiderara su dictamen. Sin embargo, el 17 de mayo de 1996, esta se reafirmó en su determinación de suspenderle los beneficios de pensión. Inconforme, el señor Pérez Droz apeló la determinación de la Administración ante la Junta de Síndicos. El 2 de septiembre de 1998, esta última confirmó las determinaciones de la primera. Todavía insatisfecho, el señor Pérez Droz acudió ante el Tribunal de Apelaciones, el cual denegó expedir el recurso. Finalmente, el señor Pérez Droz acudió ante nos. En 1999, denegamos su Solicitud de *Certiorari* y las posteriores solicitudes de reconsideración, debido a que el apéndice que acompañaba su recurso no cumplió con la Regla 20 (k) del Reglamento de este Tribunal. 4 L.P.R.A. Ap. XXI-A R.20 (k). Por lo tanto, **advino final y firme la determinación de la Junta de Síndicos confirmando las determinaciones de la Administración.**

Así las cosas, la Administración realizó gestiones de cobro mediante cartas y un procedimiento judicial ante el Tribunal de Primera Instancia. No obstante, el antiguo Tribunal de Distrito paralizó los procedimientos de cobro y ordenó el archivo sin perjuicio de la reclamación, a tenor con un proceso

de quiebras iniciado por el señor Pérez Droz ante el foro federal.

Casi seis años después de la determinación de la Junta de Síndicos confirmando a la Administración, el 20 de marzo de 2004, el señor Pérez Droz solicitó la restitución de los beneficios de pensión. Luego de varios trámites procesales, la Junta de Síndicos celebró una vista de conferencia. Allí, el señor Pérez Droz argumentó que, al momento de la aprobación de los beneficios por incapacidad, no surgía del texto de la Ley de Retiro prohibición alguna a que un pensionado por incapacidad realizara labores remunerativas. Es decir, el señor Pérez Droz pretendía que se le aplicara retroactivamente la doctrina que esbozamos en Rodríguez v. Retiro, 159 D.P.R. 467 (2003).[3]

Finalmente, la Junta de Síndicos confirmó la determinación de la Administración, tras concluir que las controversias referentes a la suspensión de pagos y al cobro de lo indebido por parte del señor Pérez Droz habían sido previamente adjudicadas por la agencia.

Inconforme, el señor Pérez Droz acudió ante el Tribunal de Apelaciones, el cual confirmó la determinación de la Junta de Síndicos. El foro apelativo intermedio encontró que la determinación sobre suspensión de sus beneficios había advenido final y firme. También, enfatizó que una nueva teoría legal y

---

[3] En Rodríguez v. Retiro, *supra,* atendimos un escenario muy similar al de autos y concluimos que la enmienda de 1986 a la Ley de Retiro, *supra,* no aplicaba retroactivamente a pensiones concedidas antes de su vigencia, porque lo impedía la doctrina de derechos adquiridos. En esa ocasión, no resolvimos si la norma allí establecida aplicaría de forma retroactiva. Nótese la diferencia entre la retroactividad de la enmienda a la Ley de Retiro y la retroactividad de la norma pautada en Rodríguez v. Retiro, *supra*. Ahora bien, la doctrina que plasmamos en Rodríguez v. Retiro, *supra,* no existía al momento de suspenderse los beneficios al peticionario.

la reclamación de remedios adicionales no operan como excepción a la doctrina de cosa juzgada. Aún insatisfecho, el señor Pérez Droz acude ante nos y solicita que revoquemos lo dictaminado por los foros inferiores. Expedimos el auto y, con el beneficio de la comparecencia de ambas partes, estamos en posición de resolver.

## II.

La doctrina de cosa juzgada está preceptuada en el Art. 1204 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3343. En lo pertinente, este artículo dispone que, para que se active la presunción de cosa juzgada en otro juicio, se requiere que entre el caso resuelto mediante sentencia y el caso en que se invoca la misma concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad en que lo fueron. 31 L.P.R.A. sec. 3343. *Véanse, además*: Méndez v. Fundación, 165 D.P.R. 253, 267 (2005); Pagán Hernández v. U.P.R., 107 D.P.R. 720, 732 (1978). Si se cumplen estos requisitos, no procede dilucidar nuevamente los méritos de la controversia que está ante la consideración del foro judicial. Pagán Hernández v. U.P.R., *supra*; Bolker v. Tribunal Superior, 82 D.P.R. 816, 834 (1961).

Para determinar si se satisface el requisito de identidad entre las cosas, es necesario identificar cuál es el objeto o la materia sobre la cual se ejercita la acción. A & P General Contractors v. Asoc. Caná Inc., 110 D.P.R. 753, 764 (1981). Lo esencial es determinar que ambos litigios se refieren a un mismo asunto. Rodríguez Rodríguez v. Colberg Comas, 131 D.P.R.

212, 220 (1992), citando a Q.M. Scaevola, Código Civil, Madrid, Ed. Reus, 1958, pág. 534.

Hay identidad entre las causas cuando, tanto en el pleito anterior como en el que se invoca la excepción de cosa juzgada, las acciones ejercitadas implican un mismo motivo o razón de pedir. A & P General Contractors v. Asoc. Caná Inc., *supra*, pág. 765. Por lo tanto, no debe confundirse la causa con los medios de prueba ni con los fundamentos legales de las pretensiones deducidas por las partes. Rodríguez Rodríguez v. Colberg Comas, *supra*, pág. 219-220. Satisfecho lo anterior, el requisito de identidad de causas se cumple aunque la acción ejercitada sea distinta de la primera en su calificación jurídica o en términos nominales. A & P General Contractors v. Asoc. Caná, *supra*. Tampoco impide la aplicación de la doctrina de cosa juzgada el que se introduzca una nueva teoría legal y se reclamen remedios adicionales en el segundo litigio. *Íd.* Así pues, hemos enfatizado que la causa o motivo de pedir no debe confundirse con el remedio solicitado. Mercado Riera v. Mercado Riera, 100 D.P.R. 940, 951-952 (1972).

Respecto a la identidad entre las partes litigantes, así como la calidad en que lo fueron, los efectos de la doctrina de cosa juzgada se extienden a quienes intervienen en el proceso a nombre y en interés propio. A & P General Contractors, Inc. v. Asoc. Caná Inc., *supra*, págs. 761-762; Rodríguez Rodríguez v. Colberg Comas, *supra*, pág. 220.

Cumplidos estos requisitos, la doctrina de cosa juzgada impide que, luego de emitida una sentencia en un pleito anterior, las mismas partes relitiguen en un pleito posterior

las mismas causas de acción y cosas, las controversias ya litigadas y adjudicadas, y aquellas que pudieron haber litigado. Mun. de San Juan v. Bosque Real, S.E., 158 D.P.R. 743, 769 (2003); Acevedo Santiago v. Western Digital, 140 D.P.R. 452, 464 (1996).

La doctrina de cosa juzgada se fundamenta en consideraciones de orden público y necesidad. Mun. de San Juan v. Bosque Real, S.E., *supra*. En primer lugar, protege a los ciudadanos para que no se les someta a los rigores de un proceso judicial, en múltiples ocasiones, para litigar una misma causa. Rodríguez Rodríguez v. Colberg Comas*, supra*, págs. 218-219; Pérez v. Bauzá, 83 D.P.R. 220, 225 (1961). Al mismo tiempo, vela por el interés gubernamental en que se finalicen los pleitos y en que se les dé la debida dignidad a los fallos de los tribunales. Pagán Hernández v. U.P.R., *supra,* pág. 732; Bolker v. Tribunal Superior, *supra,* pág. 832.

No obstante, la aplicación de la doctrina de cosa juzgada no procede de forma inflexible y automática cuando hacerlo derrote los fines de la justicia o consideraciones de orden público. Parrilla v. Rodríguez, 163 D.P.R. 263, 269 (2004); Pagán Hernández v. U.P.R., *supra.* Tampoco procede su aplicación cuando se trate de una sentencia nula por haber sido dictada sin jurisdicción, Tartak v. Tribunal de Distrito, 74 D.P.R. 862, 870 (1953). Asimismo, una sentencia sobre alimentos nunca será cosa juzgada. Molini v. Trib. de Distrito, 72 D.P.R. 945, 949 (1951); Castrillo v. Palmer, 102 D.P.R. 460, 463 (1974).

En cuanto al derecho administrativo, la doctrina de cosa juzgada podría aplicar en tres vertientes: (1) dentro de la

misma agencia; (2) interagencialmente, es decir, de una agencia a otra; y (3) entre las agencias y los tribunales. Mun. de San Juan v. Bosque Real, S.E., *supra,* pág. 770; Pagán Hernández v. U.P.R., *supra*, pág. 733. Para que la doctrina de cosa juzgada aplique en alguna de estas vertientes, hemos enumerado dos requisitos: (1) la agencia debe actuar en una capacidad judicial donde resuelva las controversias ante sí; y (2) las partes deben haber tenido una oportunidad adecuada para litigar. Pagán Hernández v. U.P.R., *supra*, citando a U.S. v. Utah, 384 U.S. 394 (1966).

Sin embargo, la doctrina de cosa juzgada no es de aplicación automática y absoluta a los procesos administrativos, pues la Rama Judicial tiene el poder de modificar o rechazar las determinaciones administrativas cuando hacerlo sea lo más justo y conveniente de acuerdo al interés público. Acevedo v. Western Digital Caribe, Inc., 140 D.P.R. 452, 454 (1996). No obstante, la mera invocación de un derecho constitucional frente a una actuación administrativa no nos obliga automáticamente a descartar la presunción de cosa juzgada, sino que debemos investigar las circunstancias de cada caso individualmente. Pagán Hernández v. U.P.R., *supra,* págs. 735-737.

III.

En el caso de autos, la Junta de Síndicos se negó en 2004 a reinstalarle al señor Pérez Droz los beneficios que se le suspendieron en 1991, por entender que el asunto planteado era cosa juzgada. El Tribunal de Apelaciones confirmó esta determinación, por los mismos fundamentos. Al analizar el

historial procesal del caso de marras, concluimos que los foros inferiores actuaron correctamente. Veamos.

En 1991, la Administración le notificó al señor Pérez Droz la suspensión de los beneficios de pensión. Este solicitó reconsideración ante la Administración, sin éxito. En 1992, la Administración le notificó haber incurrido en un cobro indebido de pensión por la suma de $23,093.75. Ese mismo año, el señor Pérez Droz solicitó nuevamente a la Administración que reconsiderara su dictamen. En 1996, la agencia reafirmó su determinación. Así las cosas, el señor Pérez Droz apeló ante la Junta de Síndicos, la cual confirmó en 1998 las determinaciones de la Administración. Inconforme, el señor Pérez Droz acudió ante el Tribunal de Apelaciones, el cual denegó expedir el recurso. Aún insatisfecho, el señor Pérez Droz acudió ante nos. En 1999, denegamos su petición de *Certiorari,* debido a su incumplimiento con las disposiciones reglamentarias de este Tribunal respecto al apéndice que acompañaba su recurso. Luego, nos solicitó que reconsideráramos nuestra denegatoria. Sin embargo, mantuvimos nuestra posición. Por lo tanto, **en 1999, advino final y firme la determinación de la Junta de Síndicos de confirmar la suspensión de los beneficios de pensión al señor Pérez Droz.**

Media década más tarde, en 2004, el señor Pérez Droz intentó revivir esta controversia y solicitó que se le restituyera su pensión por incapacidad. Para ello, invocó los fundamentos que establecimos en Rodríguez v. Retiro*, supra*. No obstante, entre esta nueva reclamación y la determinación inicial que advino final y firme en 1999, existe la identidad

requerida para la aplicación de la doctrina de cosa juzgada. 31 L.P.R.A. sec. 3343. *Véanse, además*: Méndez v. Fundación, *supra,* pág. 267; Pagán Hernández v. U.P.R., *supra,* pág. 732.

En la reclamación presentada en 2004, el señor Pérez Droz solicita una vez más que se le reinstale su pensión por incapacidad ocupacional y que se deje sin efecto el cobro de $23,093.75 por parte de la Administración en concepto de pensión pagada indebidamente. Asimismo, en ambas reclamaciones, el señor Pérez Droz alega que la enmienda de 1986 no podía aplicarle retroactivamente. Además, las partes en las dos reclamaciones son las mismas. Por lo tanto, entre ambas reclamaciones concurre la más perfecta identidad entre cosas, causas, litigantes y la calidad en que lo fueron.

En cuanto a la aplicación de esta doctrina en el ámbito administrativo, el historial procesal de este caso demuestra que la Administración resolvió la controversia ante sí actuando en su capacidad cuasijudicial y que el señor Pérez Droz aprovechó las herramientas apelativas disponibles para defender su causa, lo que significa que tuvo una oportunidad adecuada para litigar. Siendo así, se satisfacen los dos requisitos jurisprudenciales para la aplicación de la doctrina de cosa juzgada a los procesos administrativos. Pagán Hernández v U.P.R., *supra*.

De la misma forma, encontramos que en el caso de autos no se configura ninguna de las excepciones a la doctrina de cosa juzgada.

Alcanzada esta conclusión, es inmeritorio el argumento del señor Pérez Droz de que procede restituirle su pensión conforme

a lo que establecimos en <u>Rodríguez v. Retiro</u>, *supra*. Cuando resolvimos ese caso en 2003, la determinación de la Junta de Síndicos respecto a la solicitud del señor Pérez Droz había advenido final y firme. Asimismo, al momento de adjudicar el primer reclamo del señor Pérez Droz, no existía aún la norma que luego establecimos en <u>Rodríguez v. Retiro</u>, *supra*. En 1999, el señor Pérez Droz pudo haber levantado los mismos fundamentos de Derecho que nos presenta ahora. Inclusive, pudo haber traído los mismos argumentos que nos movieron a establecer la norma de <u>Rodríguez v. Retiro</u>, *supra.* No obstante, incumplió con los requisitos procesales de este Tribunal. Ello le impide ahora relitigar la misma controversia. Además, como recalcamos anteriormente, la introducción de una nueva teoría legal no impide la aplicación de la doctrina de cosa juzgada. <u>A & P General Contractors v. Asoc. Caná</u>, *supra*.

Por todo lo anterior, concluimos que los foros inferiores no erraron al confirmar la determinación de la Administración sobre la suspensión de pagos y el cobro de lo indebido, a base de la doctrina de cosa juzgada. Consiguientemente, confirmamos la sentencia del Tribunal de Apelaciones.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Fiol Matta emitió una Opinión Disidente. La Jueza Asociada señora Pabón Charneco no interviene.


                              Aida I. Oquendo Graulau
                           Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Everilde Pérez Droz
      Peticionario

          v.

                              CC-2010-09

Administración de los Sistemas
de Retiro de los Empleados del
Gobierno y de la Judicatura
          Recurrida


Opinión Disidente de la Jueza Asociada señora Fiol Matta


En San Juan, Puerto Rico, 10 de enero de 2012.

Disiento. Hoy, una mayoría del Tribunal rehúsa hacerle justicia a un exmiembro de la Policía de Puerto Rico cuya pensión por incapacidad ocupacional fue suspendida indebidamente. Por entender que en este caso no procede aplicar la doctrina de cosa juzgada, revocaría la decisión del Tribunal de Apelaciones y, al amparo de nuestra decisión en Rodríguez v. Retiro,[4] reinstalaría de manera prospectiva la pensión del señor Pérez Droz.

---

[4] 159 D.P.R. 467 (2003).

I.

El señor Everilde Pérez Droz trabajó como agente de la Policía de Puerto Rico, alcanzando los años de servicio acreditados en la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura. El 7 de agosto de 1966, después de trabajar por 11 años para dicha institución, sufrió un accidente automovilístico en el que sufrió un trauma en la cabeza. Como consecuencia de ello, padeció de varias condiciones emocionales, incluyendo ansiedad y neurosis post traumática. El Fondo del Seguro del Estado relacionó su accidente con el empleo. Acto seguido, el 23 de mayo de 1969, el Superintendente de la Policía de Puerto Rico solicitó a la Administración una pensión por incapacidad ocupacional a nombre del señor Pérez Droz. El 23 de enero de 1970, la Administración aprobó dicha pensión a partir del 1 de enero de 1970 "hasta tanto fuese repuesto al servicio".[5]

Varios años después, la Administración llevó a cabo una investigación en la que concluyó que el peticionario se dedicaba a labores no gubernamentales remuneradas. El 12 de septiembre de 1991, la Administración le notificó que le suspendería la pensión efectivo el 30 de dicho mes. El 10 de octubre, el peticionario solicitó reconsideración. El 9 de marzo de 1992, la agencia le notificó una reclamación por cobro de lo indebido, ascendente a $23,093.75, calculada desde el 1 de julio de 1986 al 15 de septiembre

---

[5] Sentencia del Tribunal de Apelaciones del 30 de noviembre de 2009, p. 2; Apéndice petición de *certiorari*, p. 3.

de 1991. Dicho período responde al tiempo transcurrido entre una enmienda hecha a la Ley de Retiro en 1986, que prohibía a los beneficiarios de una pensión por incapacidad ocupacional llevar a cabo trabajo remunerado que igualara o superara lo pagado por dicha pensión, y la fecha en que la agencia decidió suspender los beneficios al señor Pérez Droz. El 6 de abril de 1992, el peticionario presentó un nuevo escrito de reconsideración. El 17 de mayo de 1996, la Administración se reafirmó en su decisión original.

Inconforme con la determinación de la Administración, el 13 de junio de 1996 el señor Pérez Droz apeló a la Junta de Síndicos de dicha agencia, la que confirmó la determinación. Posteriormente, el señor Pérez Droz presentó una petición de *certiorari* a este Tribunal, la que fue declarada no ha lugar por "craso incumplimiento con el Reglamento".[6] Dicha determinación advino final y firme.[7]

Por otro lado, la agencia continuó con sus gestiones de cobro, pero el 28 de agosto de 2000 el Tribunal de Primera Instancia paralizó los procedimientos a raíz de la presentación de una solicitud de quiebra ante el Tribunal

---

[6] Resolución del 15 de octubre de 1999 (Énfasis suplido).

[7] Entre las alegaciones que hace el peticionario, quien enfatiza la identidad entre los hechos del caso de Rodríguez v. Retiro y el suyo, así como el derecho aplicable a ambas controversias, está que la razón por la que este Tribunal resolvió dicho caso a favor de Rodríguez Sierra, mientras que su caso fue declarado no ha lugar por incumplimiento craso con nuestro Reglamento, fue producto de una deficiente representación legal. En apoyo a su alegación nos refiere a In re Rivera Colón, 172 D.P.R. 340 (2007) en el que se suspende del ejercicio de la profesión al primer abogado del señor Pérez Droz por incumplir las órdenes de este Tribunal.

Federal por parte del señor Pérez Droz. En 2003, en _Rodríguez v. Retiro_, este Tribunal resolvió que la interpretación que había hecho la Administración de los Sistemas de Retiro a partir de la enmienda de 1986 no aplicaba a las pensiones por incapacidad autorizadas antes de la aprobación de dicha enmienda. Es decir, que la agencia erró al darle efecto retroactivo a los cambios aprobados en 1986.

Ante este panorama y poco después de la publicación del citado caso, el 20 de marzo de 2004 el señor Pérez Droz solicitó la restitución de los beneficios suspendidos. La Administración denegó dicha solicitud el 19 de abril de 2005 y el 23 de mayo de ese año, el peticionario apeló a la Junta de Síndicos de la agencia. El 20 de agosto de 2008, la Junta celebró una vista de conferencia y el peticionario presentó su posición por escrito. En síntesis, el señor Pérez Droz alegó que, conforme la determinación tomada en _Rodríguez v. Retiro_, la decisión de la agencia de suspender sus beneficios en 1991, al aplicar retroactivamente la enmienda de 1986, fue un error de derecho. Es decir, solicitó que se corrigiera la situación aplicándose la doctrina adoptada en aquel caso y se le restituyera la pensión otorgada en 1970.

El 15 de junio de 2009, la Junta de Síndicos confirmó la decisión de la Administración de suspender los pagos de la pensión e instar una acción por cobro de lo indebido. La Junta concluyó que las controversias planteadas por el

señor Pérez Droz ya habían sido adjudicadas previamente, por lo que aplicaba la doctrina de cosa juzgada.[8]

Inconforme, el peticionario recurrió al Tribunal de Apelaciones alegando que la Junta de Síndicos de la Administración de los Sistemas de Retiro erró al aplicar la doctrina de cosa juzgada para denegar su solicitud de reinstalación. El foro intermedio confirmó la determinación de la agencia aplicando las figuras de cosa juzgada e impedimento colateral por sentencia.

Inconforme con la determinación del Tribunal de Apelaciones, el señor Pérez Droz acude ante este Tribunal. Según él, la aprobación original de su pensión por parte de la Administración de los Sistemas de Retiro estaba sujeta a la ley vigente en 1970. Es decir, que la aplicación retroactiva en 1991 de la enmienda a la Ley de Retiro en 1986, mediante la cual se le suspendieron los beneficios únicamente porque se dedicaba a una ocupación no gubernamental, sin llevar a cabo exámenes médicos que certificaran que ya no estaba incapacitado y sin ofrecerle una reposición como proveía la Ley en 1970, no debe prevalecer. Además, enfatiza que, dado que la decisión anterior de suspenderle los beneficios de la pensión fue un error de derecho, ello anula la presunción de cosa juzgada. En particular, alega que la representación legal deficiente que tuvo durante la primera parte de esta controversia

_____

[8] Conclusión de Derecho núm. 19, Resolución de la Junta de Síndicos de la Administración de los Sistemas de Retiro, p. 7; Apéndice petición de *certiorari*, p. 19.

choca con la doctrina de cosa juzgada que requiere que la persona contra quién se emplea la figura haya tenido una oportunidad adecuada para presentar su caso. Finalmente, alega que el derecho a recibir su pensión por incapacidad ocupacional, la que fue indebidamente suspendida en 1991, está revestido de un alto interés público, por lo cual se configura una excepción a la aplicación de la doctrina de cosa juzgada.

Por su parte, la Procuradora General, en representación de la Administración, sostiene que no se debe aplicar al caso del peticionario nuestra determinación en Rodríguez v. Retiro, resuelto en 2003, pues "[e]ste caso fue discutido por primera vez por el peticionario cuando el caso cobró vida nuevamente en el 2003, al él reclamar que, a base de esta decisión, no procedía la suspensión de los beneficios".[9] Los recurridos plantean que el objetivo de la doctrina de cosa juzgada de darle finalidad a los pleitos debe prevalecer. El 28 de mayo de 2010 expedimos el auto de certiorari.

II.

En Rodríguez v. Retiro nos enfrentamos a la interrogante de si la Ley Núm. 61 de 1 de julio de 1986,

_____

[9] Alegato de la Parte Recurrida, pp. 7-8. Esta postura de la Procuradora General es confusa, pues evidentemente el peticionario tenía que esperar a que se resolviera y publicara Rodríguez v. Retiro para poder citarlo.

que enmendó el artículo 11 de la Ley de Retiro, tenía efecto retroactivo, como sostenía la Administración de los Sistemas de Retiro. Dicha enmienda "autorizaba a la Administración a suspender automáticamente el pago de la pensión por incapacidad sin la necesidad de un examen médico en aquellos casos en los cuales el pensionado estuviese trabajando y devengando un salario igual o mayor al importe de la pensión".[10]

Los hechos de ese caso son evidentemente similares a los de la controversia ante nuestra consideración. En esa ocasión, el demandante, quién se desempeñaba como policía, sufrió un accidente que le incapacitó. Posteriormente, solicitó y obtuvo una pensión por incapacidad ocupacional bajo la Ley de Retiro, la que finalmente fue aprobada indefinidamente en 1977. Es decir, obtuvo la misma antes de que se aprobaran las enmiendas de 1986. Según explicamos, "[l]a ley entonces no prohibía, al menos no surgía del texto, el que una persona pensionada por incapacidad pudiera laborar en la empresa privada desempeñando funciones distintas a las que realizaba al momento de su incapacidad".[11] Por el contrario, lo único que establecía la ley era que el pensionado se sometería a exámenes médicos periódicos para determinar que continuaba la incapacidad. Por tanto, para que la Administración suspendiera los beneficios de la pensión, tenía que demostrar que la

---

[10] Rodríguez v. Retiro, *supra*, p. 470.

[11] *Id.*

incapacidad ya no existía y no se justificaba la continuación de los beneficios. No obstante, en 1994 la agencia descubrió que el demandante se dedicaba a labores remuneradas mientras recibía los beneficios de la pensión por incapacidad ocupacional. Por tanto, decidió suspenderle la pensión e instó una acción en cobro de dinero por los pagos hechos entre 1986, fecha de vigencia de la enmienda que prohibía que los pensionados trabajaran por una remuneración mayor a la pensión, y la fecha de la efectividad de la suspensión. La Junta de Síndicos de la agencia confirmó la determinación.

Tras considerar la controversia, resolvimos que la aplicación retroactiva de las enmiendas de 1986 perjudicaba derechos adquiridos. Por tanto, dicha aplicación era improcedente.[12] Particularmente en cuanto los derechos relacionados a una pensión, hicimos referencia a la norma establecida en Bayrón Toro v. Serra,[13] manifestando lo siguiente:

> [U]na vez el empleado se ha retirado, su pensión no está sujeta a cambios o menoscabos que resulten de posteriores enmiendas legislativas a la Ley de Retiro, supra. Aunque nuestras expresiones fueron únicamente en cuanto a las pensiones de retiro y aclaramos que no nos manifestamos sobre algún otro tipo de pensión de naturaleza diferente, como podría[n] ser las de rango o mandato constitucional […] no cabe duda

---

[12] Id, p. 476 citando el artículo 3 del Código Civil, 31 L.P.R.A. § 3.

[13] 119 D.P.R. 605 (1987).

que el mismo razonamiento es de aplicación al caso que nos ocupa.[14]

[…]

En virtud de todo lo antes expuesto, resolvemos que a la luz de la doctrina de derechos adquiridos, una vez el empleado se ha retirado o incapacitado, su pensión no está sujeta a cambios o menoscabos que resulten de posteriores enmiendas legislativas a la Ley de Retiro, *supra*. Por consiguiente, la enmienda al Art. 11 de la Ley de Retiro de 1986, *supra*, no podría ser aplicable a Rodríguez Sierra. Al ser inaplicable dicha enmienda, era irrazonable suspender los pagos de la pensión. El deber de la Administración era someter al pensionado a los exámenes médicos requeridos por ley y, de determinarse que había cesado la incapacidad, continuar entonces con el proceso para su reubicación. De otra manera, no podría concluir que hubo cobro indebido de pensión.[15]

De lo anterior se desprende inequívocamente que la práctica de la Administración de automáticamente suspender pensiones y demandar en cobro de dinero a personas cuyas pensiones fueron otorgadas antes de la vigencia de las enmiendas a la Ley de Retiro en 1986, por el mero hecho de estar trabajando por una remuneración, es contraria a derecho. Lo anterior es cónsono con nuestros pronunciamientos recientes acerca de los derechos adquiridos. En Hernández, Romero v. Pol. de P.R. manifestamos que un derecho adquirido es aquel "que se encuentra definitivamente incorporado al patrimonio de una persona y que como regla general han [*sic*] de ser

---

[14] Rodríguez v. Retiro, *supra*, p. 477 citando a Bayrón Toro v. Serra, *supra*, p. 615.
[15] *Id*, p. 477.

respetados [*sic*] por las nuevas leyes".[16] Por tanto, "[u]n derecho adquirido se incorpora dentro del patrimonio del titular del derecho y está protegido constitucionalmente frente a cualquier gestión gubernamental que pretenda intervenirlo".[17] En ese caso resolvimos que el derecho de escoltas de los exgobernantes era un "derecho adquirido constitucionalmente protegido".[18] Lo que nos corresponde ahora determinar es si el hecho de que hubiese advenido final y firme la determinación de suspender los beneficios al señor Pérez Droz antes de que se resolviera Rodríguez v. Retiro impide que se le dé efecto en este caso a esa decisión, por virtud de la doctrina de cosa juzgada.

III.

La doctrina de cosa juzgada, establecida en el artículo 1204 del Código Civil,[19] evita que una controversia sea litigada nuevamente cuando ya hubo una resolución definitiva de la misma mediante determinación final y firme. Hemos resuelto que "[e]n nuestro acervo jurídico la presunción de cosa juzgada se rige por los postulados del Derecho Civil".[20] Para que dicha doctrina aplique hace falta "la más perfecta identidad entre las cosas, las causas, las

---

[16] 177 D.P.R. 121, 145-146 (2009).

[17] *Id,* p. 146.

[18] *Id,* p. 145.

[19] 31 L.P.R.A. § 3343.

[20] Acevedo v. Western Digital Caribe, Inc., 140 D.P.R. 452 (1996).

personas de los litigantes y la calidad con que lo fueron".[21] Esta figura cumple con dos importantes objetivos. En primer lugar, poner fin a las cuestiones litigiosas. En segundo lugar, no someter a un ciudadano a las molestias de litigar la misma causa después de que ha habido una adjudicación en los méritos.[22] Sin embargo, los tribunales se han negado a aplicar en forma inflexible la defensa de cosa juzgada, **especialmente si hay envueltas consideraciones de orden público**.[23] Hemos resuelto que "si la aplicación rigurosa de esta doctrina derrotaría en la práctica un derecho permeado en alguna forma del interés público, los tribunales se inclinarán hacia la solución que garantice cumplida justicia, en lugar de favorecer en forma rígida una ficción de ley que obedece fundamentalmente a un principio de conveniencia y orden procesal".[24] En otras palabras, la regla no es absoluta y debe siempre considerarse conjuntamente con el saludable principio de que debe dispensarse justicia en cada caso.[25] Por ejemplo, en Pérez v. Bauzá rehusamos aplicar la doctrina de cosa juzgada, a pesar de que estaban presentes todos los elementos requeridos por dicha figura, por tratarse de una acción de filiación y alimentos. Ahora bien, en casos que

---

[21] 31 L.P.R.A. § 3343.

[22] Pérez v. Bauzá, 83 D.P.R. 221 (1961).

[23] *Id*, p. 226.

[24] *Id* (Énfasis suplido).

[25] *Id.*

versen sobre "relaciones puramente privadas entre las partes que no justifican una desviación del efecto normal de la cosa juzgada",[26] aplicaremos la doctrina.

En Pagán Hernández v. U.P.R. discutimos la aplicación de la doctrina de cosa juzgada, y sus excepciones, en el ámbito administrativo.[27] Allí explicamos que "[e]l efecto de la doctrina de cosa juzgada, cuando ésta aplica, es que la sentencia dictada en un pleito anterior impide que se litiguen en un pleito posterior entre las mismas partes y sobre la misma causa de acción y cosas, las cuestiones ya litigadas y adjudicadas con propiedad en la acción anterior".[28] En el caso particular de los procedimientos administrativos, resolvimos que la doctrina de cosa juzgada tiene tres vertientes: (1) su aplicación dentro de la misma agencia, a sus propias decisiones; (2) su aplicación interagencialmente, es decir, de una agencia a otra; y (3) su aplicación entre las agencias y los tribunales.[29] En cualquiera de estas circunstancias, hace falta que la

---

[26] Mercado Rivera v. Mercado Rivera, 100 D.P.R, 940, 953 (1972). En dicho caso, aunque aplicamos la doctrina de cosa juzgada por ser una controversia puramente privada, reafirmamos la norma de que la aplicación de dicha figura cederá a los fines de hacer cumplida justicia o cuando hay envueltas consideraciones de orden público. Id.

[27] 107 D.P.R. 720 (1978). Curiosamente, dicho caso también versó sobre una determinación administrativa final y firme, una decisión judicial posterior que afectó positivamente los derechos del demandante, la presencia de derechos de gran importancia y una defensa de cosa juzgada. En este caso, la defensa no prosperó.

[28] Pagán Hernández v. U.P.R., supra, pp. 732-733.

[29] Id, p. 733.

agencia actúe "en una capacidad judicial y [resuelva] controversias de hechos ante sí, las cuales las partes han podido litigar en forma oportuna y adecuada".[30] En esos casos, los tribunales aplicarán la doctrina de cosa juzgada para imponer descanso en la controversia.[31] Ahora bien, "la aplicabilidad de la doctrina en el campo administrativo es flexible y depende de la naturaleza de la cuestión que se plantea en el ámbito judicial".[32] En particular, cuando la sentencia "cuya recisión se intentó pero que no se pudo lograr por razones ajenas a la voluntad del apelante" o derrotaría los "fines de la justicia, […] especialmente si se plantean consideraciones de interés público" la flexibilidad será aún mayor.[33] Esto aplica con mayor fuerza cuando se trata de derechos de rango constitucional.[34] Claro está, "[l]a mera invocación de un derecho constitucional frente a una actuación administrativa no es la llave que automáticamente nos obligue a descartar la presunción de cosa juzgada. Precisa investigar las circunstancias de cada caso en particular".[35] En Pagán Hernández v. U.P.R.

---

[30] *Id*, p. 734.

[31] *Id*.

[32] *Id*, p. 735 (Énfasis suplido). Véase además Mun. de San Juan v. Bosque Real, S.E., 158 D.P.R. 743, 770 (2003): "A pesar de lo anterior, la aplicabilidad de la doctrina a los procesos administrativos no es automática y absoluta".

[33] Pagán Hernández v. U.P.R., *supra*, pp. 735-736 y n. 6 (Énfasis suplido).

[34] *Id*, p. 737.

[35] *Id*, p. 738.

rehusamos aplicar la doctrina de cosa juzgada por tratarse del derecho constitucional a la educación. Igual hicimos en Mun. de San Juan v. Bosque Real, S.E. por tratarse de la protección de nuestros recursos naturales y el ambiente. Finalmente, hemos insistido en que para que se aplique la doctrina de cosa juzgada a un procedimiento administrativo, hace falta evaluar "si las partes han podido litigar oportunamente y adecuadamente la controversia presentada en el foro administrativo".[36]

IV.

No cabe duda que la decisión de la Administración de los Sistemas de Retiro de suspender automáticamente la pensión del peticionario al concluir que éste llevaba a cabo trabajo remunerado fue un error de derecho. A dicha conclusión llegamos en Rodríguez v. Retiro donde atendimos una situación de hechos casi idéntica a la de autos. Ese hecho no está en disputa. Por el contario, el argumento principal de la agencia, acogido por una mayoría del Tribunal, es que la doctrina de cosa juzgada le impide cambiar su decisión en cuanto a la suspensión de la pensión del señor Pérez Droz. Como hemos visto, la doctrina de cosa juzgada, si bien es de naturaleza sustantiva, tiene un objetivo procesal y no es absoluta. Por el contrario, cede cuando hay envueltos derechos constitucionales importantes

---

[36] Mun. de San Juan v. Bosque Real, S.E., *supra*, p. 770, citando a Acevedo v. Western Digital Caribe, Inc., *supra*, p. 454.

y considraciones de política pública. Además, en el ámbito administrativo, dicha figura opera con mayor flexibilidad.

En el caso de autos, se trata de una pensión por incapacidad ocupacional a la que el señor Pérez Droz, quien es una persona de edad avanzada, tiene derecho. Evidentemente estamos ante un derecho adquirido que goza de protección constitucional y la controversia no versa exclusivamente sobre derecho privado. Privarle al señor Pérez Droz de la pensión que nunca se le debió haber cancelado automáticamente en primera instancia porque la agencia actuó antes de nuestra decisión en Rodríguez v. Retiro **derrota el interés público en que nuestros pensionados gocen de los beneficios a los que tienen derecho**. Aplicar la doctrina de cosa juzgada ante estos hechos constituye un ejercicio formalista rígido que resulta un fracaso de la justicia. Nuestra normativa no permite dicho desenlace.[37] En cuanto al remedio a otorgarse en este caso, entiendo que lo más prudente y equitativo era conceder al peticionario los beneficios solicitados desde el momento en que éste solicitó la restitución de su pensión.

La Sentencia que hoy emite el Tribunal describe correctamente la figura de la cosa juzgada y reconoce que opera una excepción a su aplicación cuando están envueltos asuntos de alto interés público. Sin embargo, una vez

---

[37] Además, hay suficiente información en el expediente como para cuestionar si el peticionario tuvo una oportunidad adecuada para defenderse en el procedimiento administrativo que le despojó de su pensión.

concluye que hay identidad entre las cosas, las causas, las personas de los litigantes y la calidad en que lo fueron, la Sentencia ignora completamente la discusión de si estamos frente a un asunto de alto interés público; en este caso, la pensión de un exmiembro de la Policía que sufrió un accidente ocupacional. Por el contrario, la Sentencia se limita a afirmar, sin discutir ni profundizar, que "en el caso de autos no se configura ninguna de las excepciones a la doctrina de cosa juzgada".[38] Es decir, para el Tribunal, el derecho del señor Pérez Droz a que se le devuelva una pensión que nunca se le debió haber quitado no es un asunto de interés público. De esa forma, hoy triunfa la inflexibilidad y fracasa la justicia.

Liana Fiol Matta
Jueza Asociada

---

[38] Sentencia, p. 11.