ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| MARIDZA RIVERA MONTAÑEZ<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE DESARROLLO ECONÓMICO Y COMERCIO; OFICINA DE GERENCIA DE PERMISOS; LHEE, INC., H/N/C PA'L 24 STEAKHOUSE & TAPAS<br><br>Recurridos | KLRA202400095 | *RECURSO DE REVISIÓN* procedente de la Oficina de Gerencia de Permisos<br><br>Caso núm.: 2022-444154-SDR-014192<br><br>Sobre: Impugnación de Permiso de Construcción |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

Rivera Marchand, Jueza Ponente

### SENTENCIA EN RECONSIDERACIÓN

En San Juan, Puerto Rico, a 30 de mayo de 2025.

Comparece la señora Maridza Rivera Montañez (señora Rivera Montañez o recurrente) y solicita la revocación de la *Resolución* emitida por la Oficina de Gerencia de Permisos, bajo el Departamento de Desarrollo Económico y Comercio (OGPe o agencia recurrida), el 14 de febrero de 2024. En esta, la agencia recurrida denegó la solicitud de impugnación instada por la recurrente sobre el permiso otorgado para la legalización de una obra de construcción de LHEE, Inc. H/N/C Pa'l 24 Steakhouse & Tapas (LHEE o recurrida).

Insatisfecha, la señora Rivera Montañez acudió ante esta Curia y mediante *Sentencia* emitida el 28 de febrero de 2025, por determinación mayoritaria de este panel,[1] se confirmó el dictamen

---

[1] Voto mayoritario compuesto por la Jueza Cintrón Cintrón (Presidenta), el Juez Rodríguez Flores y el *Voto Disidente* de la Jueza Rivera Marchand.

administrativo.

Oportunamente, la recurrente solicita reconsideración, a la cual se opone la OGPe. Examinadas las posturas de las partes, al amparo de la Regla 84 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 84, acogemos la reconsideración y la declaramos, ha lugar. A esos efectos y por los fundamentos que exponemos a continuación, revocamos la determinación administrativa recurrida.

## I.

Acogemos los hechos plasmados en la *Sentencia* emitida por esta Curia el 28 de febrero de 2025. Sin embargo, con el propósito de fundamentar nuestro curso decisorio procedemos a destacar y resaltar lo siguiente del tracto procesal que, surge del expediente.

La propiedad objeto de la causa se encuentra localizada en la Carr. 115 Km. 6.4, Bo. Caguabo, Añasco, Puerto Rico, dentro de un distrito Comercial Turístico Liviano (CT-L) lo cual, según la tabla de equivalencias de los distritos de calificación, resulta igual a un distrito Comercial Turístico (C-T), según definido por el *Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios,* Núm. 9473, de 16 de junio de 2023 (Reglamento Conjunto 2023). Mediante la Regla 6.1.12.2 de dicho Reglamento, se establece el propósito y los usos permitidos en estas áreas. En particular, distingue el uso que se permite en el segundo nivel (uso comercial) y el uso permitido **sobre el segundo nivel (uso residencial y de hospedería)** de las estructuras construidas en dicho distrito.

Con ello en mente, precisamos que, en el predio objeto de la controversia, la empresa LHEE, Inc. comenzó la construcción de una terraza sobre el segundo nivel de la referida propiedad, en el cual, operaba un negocio comercial. En su primer intento para cuestionar la legalidad de la referida construcción que se encuentra aledaña a

su hogar, la señora Rivera Montañez presentó una *Querella* ante la División de Auditorías y Querellas de la Junta de Planificación y expuso que:

> Durante varios meses los nuevos dueños del restaurante el Coche están remodelando dicho restaurante y están <u>haciendo una terraza barra restaurante encima del techo de dicho negocio</u> y al aire libre. Esto me quita mi privacidad y al mismo tiempo ventilación pues tengo que encerrarme en mi casa porque no tengo privacidad. <u>Esta terraza barra queda al lado de la ventana de mi habitación</u> lo que me separa de dicha terraza es una verja. También el ruido que esto provoca pues es una terraza al aire libre no es una estructura cerrada.[2]

Pendiente lo anterior, el 8 de febrero de 2022, la recurrente, también presentó una demanda[3] ante el Tribunal de Primera Instancia, Sala Superior de Mayagüez (TPI), contra LHEE, Inc. sobre: (1) *injunction* estatutario al amparo del Art. 14.1 de la Ley núm. 161-2009, 23 LPRA sec. 9011 *et seq*; (2) acción por estorbo público; y (3) reclamación por violación a la intimidad. La recurrente alegó, en síntesis, que sin tener los permisos de construcción la recurrida <u>continuó la construcción hasta terminarla a pesar de que la Junta de Planificación investigó y determinó que la construcción fue realizada sin el debido permiso requerido en ley</u>. Expuso que, los actos de LHEE, Inc. le causaron desasosiego, alteraron su paz y le afectaron su tranquilidad, estorbándole el goce de su propiedad y privándole de su intimidad.

Tras la celebración de una vista evidenciaria, el TPI expidió el *injunction* estatutario solicitado y así, ordenó la paralización de la obra de construcción que operaba bajo el nombre de PA'L 24 STEAK & TAPAS en la propiedad de la parte recurrida. Además, prohibió el acceso de personas a la terraza de dicho negocio, so pena de

---

[2] Tomamos conocimiento de lo citado y expuesto por un panel hermano en la *Sentencia* emitida el 30 de noviembre de 2022 en el Recurso Núm. KLRA202200585. Subrayado nuestro.
[3] Caso civil núm. MZ2022CV00156.

desacato. Cabe destacar que el foro primario consignó en sus determinaciones de hecho lo siguiente:

> 1. La parte demandante Maridza Rivera Montañez residente en la Carr. PR-115, Km. 6.5, Barrio Caguabo, Añasco, Puerto Rico.
> 2. La parte demandada, LHEE. INC., es una corporación, activa, doméstica y con fines de lucro que opera el negocio Pal 24 Steakhouse & Tapas ubicado en la Carr. PR 115, Km. 6.4, Barrio Caguabo, Añasco, Puerto Rico.
> 3. Anteriormente, en dicho edificio ubicaba el restaurante El Coche, que contaba con dos plantas de comercio.
> 4. A finales de octubre de 2020, la parte demandada comenzó una construcción en el edificio preexistente en la finca colindante a la residencia la Demandante, donde ya ubica un negocio comercial propiedad del demandado.
> 5. No se ubicó rotulo alguno en el área de construcción que advirtiera a los ciudadanos sobre la referida construcción y/o que notificara el número del permiso de construcción otorgado conforme a la reglamentación vigente.
> 6. **La parte demandada construye <u>un tercer nivel</u> en la estructura donde ubica su negocio**, dando acceso a los comensales para su uso y disfrute.
> 7. El día 10 de julio de 2021 la demandante presentó una querella ante la Junta de Planificación y esta emitió NOTIFICACIÓN DE HALLAZGOS Y ORDEN DE MOSTRAR CAUSA contra el Sr. Luis Heriberto Rodriguez Torres en la que concluye que "la Parte Querellada se encuentra en incumplimiento debido a que no cuenta con los permisos correspondientes para realizar la obra observada durante la inspección.
> 8. **La parte demandada no posee un permiso de construcción para la construcción del <u>tercer nivel</u>**.

(Énfasis nuestro).

Es preciso destacar que, la determinaciones y conclusiones notificadas mediante la referida *Sentencia Parcial* sobre el *injunction* estatutario, no han sido alteradas, toda vez que, el dictamen judicial advino final y firme.

Pendiente la adjudicación de los asuntos pendientes en este caso y correspondientes a la solicitud de *Injunction Permanente* ante el TPI, LHEE Inc. solicitó ante la OGPe un permiso de construcción mediante el proceso de legalización, por los tres vagones que ya había colocado encima de la segunda planta de la propiedad.[4]

---

[4] Cabe señalar que, mediante *Sentencia* emitida el 30 de septiembre de 2022, el TPI tomó conocimiento sobre el acto de la OGPe de acoger una nueva solicitud de permiso de construcción interpuesta por LHEE Inc. por la vía de legalización, por lo que, el foro primario se declaró sin jurisdicción, sobre los asuntos pendientes.

En reacción, la señora Rivera Montañez volvió a presentar una solicitud de revisión administrativa ante la OGPe, la cual fue resuelta en su contra.

Insatisfecha, la señora Rivera Montañez instó un recurso (KLRA202200585) ante esta Curia y un panel hermano mediante una *Sentencia* emitida el 30 de noviembre de 2022, revocó el dictamen administrativo mediante el cual la OGPe, dio paso al intento de legalización solicitada por LHEE Inc. y devolvió el asunto ante la agencia.

Coetáneo a ello, la señora Rivera Montañez volvió ante el foro judicial en búsqueda de remedios. A esos efectos, instó otra demanda[5] al amparo del Art.14.1 de la Ley 161-2009, suplicando al foro primario que, emitiera nuevamente un *injunction* y ordenara la demolición de la estructura comercial construida en el tercer nivel sin un permiso de construcción. Nuevamente, el TPI celebró una vista evidenciaria, en atención al *injunction* estatutario instado, y tras justipreciar la prueba presentada consignó las siguientes determinaciones de hecho:

> 1.La parte demandada conserva una construcción **sobre la segunda planta** en el edificio preexistente en la finca colindante a la residencia la Demandante, donde ya ubica un negocio comercial propiedad del demandado.
> 2. La parte demandada no posee un permiso de construcción para la construcción **sobre la segunda planta** donde ubica su negocio comercial.

Basado en lo antes y el derecho aplicable, el TPI dictó una *Sentencia Parcial,* el 30 de agosto de 2023, en la que concluyó que, no existía un permiso de construcción para el proyecto, sin embargo, ordenó a LHEE, Inc. a presentar un permiso de construcción en o antes del 29 de septiembre de 2023, so pena de desacato y remoción de la obra. En particular expuso que, los hechos permiten concluir, como ya lo había hecho una sala hermana de esta previamente, en el caso MZ2022CV00156 del que, nuevamente, no existe un permiso

---

[5] Caso Civil Núm. MZ2023CV01386.

de construcción según requerido para la obra de construcción sobre la segunda planta realizada en la propiedad antes descrita.[6]

Así las cosas, LHEE Inc., de nuevo presentó ante la OGPe, la solicitud de permiso de construcción para la legalización de los tres vagones para uso accesorio de barra, baño y cocina. Asimismo, en reacción, el 16 de noviembre de 2023, la señora Rivera Montañez, presentó una *Solicitud de Revisión Administrativa* ante la OGPe.[7] En su solicitud argumentó, entre otras cosas, que no fue notificada de la solicitud y concesión del permiso de construcción, que la obra violenta el Reglamento Conjunto 2023, y que sobre esta construcción existen dos sentencias emitidas por el TPI, razón por la cual, planteó la defensa de cosa juzgada, en su modalidad de impedimento colateral por sentencia.

LHEE Inc. se opuso a la postura de la señora Rivera Montañez. Arguyó ante la agencia que, el permiso es uno de carácter ministerial, que cumple con todos los parámetros del distrito en el que ubica el inmueble, razón por la cual, solamente se requiere ubicar en la propiedad el rótulo de aviso de presentación del permiso. Indicaron que, los tres vagones están en el segundo nivel de la estructura, vista desde la Carr. 115. Manifestó que, el salón comedor está en el primer nivel y la terraza en el segundo nivel. Expuso que, la altura en número de plantas de la estructura cumple la definición establecida en el Reglamento Conjunto y que no aplica el proceso de variación de uso y consulta de ubicación para legalizar la obra realizada encima de la segunda planta mediante colocación de tres vagones.

---

[6] Cabe señalar que, el TPI emitió otra *Sentencia Parcial* el 3 de octubre de 2023, mediante la cual determinó que, no se probó invasión de privacidad de la recurrente. Además, el TPI señaló una vista ocular y juicio en su fondo a celebrarse el 26 y 27 de agosto de 2025. Véase Minuta dela vista celebrada el 4 de marzo de 2025.

[7] *Íd.*, págs. 81-91.

Tras la celebración de una vista evidenciaria, la agencia recurrida emitió el dictamen administrativo impugnado. En esencia concluyó que, el permiso de construcción es uno de carácter ministerial, para el que solamente se requiere la colocación del rótulo de aviso de presentación de la solicitud, y no la notificación individual a los colindantes de la propiedad donde se propone la acción. Por tanto, resolvió que, al haberse presentado evidencia de que se instaló el rótulo de presentación de la solicitud de permiso en la propiedad, en la que se propone la acción, el proponente había cumplido con la reglamentación aplicable a la notificación de la solicitud; y con ello, la señora Rivera Montañez -quien en efecto reconoció haber visto el referido rótulo– había quedado debidamente notificada de la solicitud del permiso en cuestión y no correspondía notificar a la recurrente como parte interventora.

Con relación a los parámetros de construcción establecidos para el distrito C-T, la OGPe determinó que, el uso comercial de restaurante está ministerialmente permitido en dicho distrito y que el proyecto cumple con las disposiciones legales y reglamentarias aplicables.

En cuanto al planteamiento de cosa juzgada -en su modalidad de impedimento colateral por sentencia- la agencia recurrida concluyó que, los recursos instados ente el TPI, sobre *injunction* estatutario, se limitaron a determinar si la construcción contaba o no con un permiso de construcción. En dichas causas, no se evaluó si la construcción cumplía con los parámetros de construcción establecidos en el Reglamento Conjunto de 2023.[8] Además, el foro primario nada dispuso sobre una prohibición para construir u obtener un nuevo permiso. Ante tales circunstancias, determinó que

---

[8] Por inadvertencia, la *Resolución* contiene un error tipográfico en su pág. 15, cuando único hace referencia al Reglamento Conjunto de 2020. Como es conocido, el 16 de junio de 2023, el Tribunal Supremo emitió una Opinión *Per Curiam*, en el caso *Martínez Fernández et al. v. OGPe et al.*, 212 DPR 285 (2023), en la que declaró la nulidad de los Reglamentos Conjuntos de 2019 y 2020.

la doctrina de cosa juzgada, en la modalidad de impedimento colateral por sentencia, no aplica a la controversia planteada en el caso de autos.

Insatisfecha la señora Rivera Montañez acude ante esta Curia y señala que la OGPe cometió los siguientes señalamientos de error:

> Erró la DRA-OGPe al no reconocer un hecho esencial que fue litigado y adjudicado mediante sentencia final, en dos litigios anteriores ante este Hon. Tribunal General de Justicia, para evitar litigios innecesarios y decisiones inconsistentes bajo la doctrina de cosa juzgada en la modalidad de impedimento colateral por sentencia y, al contrario, contravenir la deferencia a la corrección de las determinaciones de hechos del tribunal, negándoles su eficacia y creando decisiones inconsistentes.
>
> Erró la DRA-OGPe, sin autoridad para ello, al validar la expedición por la OGPe del permiso impugnado y confirmado por la primera, a pesar que la otorgación del permiso impugnado en este distrito comercial turístico liviano(CT-L) para ese tipo de obra era un asunto discrecional, que requería una solicitud de variación a la agencia (porque el mismo no se contempla ni como una excepción para este distrito de calificación), ameritaba una consulta de ubicación y requería determinaciones de hecho y conclusiones de derecho de la Junta Adjudicativa en su resolución. (Mayúsculas y negrillas suprimidas).

LHEE, Inc. y la OGPe acreditaron sus respectivos alegatos en oposición. En sus escritos reiteran sus posturas antes resumidas y destacan que, la determinación administrativa goza de una presunción de corrección. Según antes indicado, en una ocasión anterior la mayoría de esta Curia determinó confirmar la *Resolución* administrativa cuestionada.[9] Sin embargo acogida la oportuna y fundamentada *Moción de Reconsideración* instada por la recurrente y luego de justipreciar las posturas de ambas partes, procedemos a elaborar el derecho aplicable que fundamenta la presente *Sentencia en Reconsideración*.

**II.**

**A. Revisión Administrativa**

---

[9] *Sentencia* emitida el 28 de febrero de 2025, por determinación mayoritaria de este panel, compuesto por la Jueza Cintrón Cintrón (presidenta), el Juez Rodríguez Flores y el *Voto Disidente* de la Jueza Rivera Marchand.

La Sección 4.1 de la Ley Núm. 38-2017, Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), 3 LPRA sec. 9671, dispone que las decisiones administrativas pueden ser revisadas por el Tribunal de Apelaciones. Ahora bien, en el ejercicio de tal facultad, el foro apelativo está obligado a ser deferente a las determinaciones de los organismos administrativos en consideración a la experiencia y al conocimiento especializado que estas poseen sobre los asuntos que le fueron delegados. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan,* 2025 TSPR 33, resuelto el 27 de marzo de 2025. Al mismo tiempo, esta facultad revisora delimita la discreción de los organismos administrativos a modo de asegurar que estos ejerzan sus funciones dentro de los márgenes de las facultades que le fueron delegadas por ley. *Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros,* 2025 TSPR 56, resuelto el 21 de mayo de 2025.[10] Por último, permite a los foros judiciales velar que los entes administrativos den cumplimiento a los mandatos constitucionales, en especial, el debido proceso de ley. *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* 213 DPR 743 (2024).

Como se sabe, las agencias administrativas son en muchas ocasiones los primeros intérpretes de las leyes que rigen el ejercicio de su ministerio. *Buxó Santiago v. Oficina de Ética Gubernamental,* 2024 TSPR 130, resuelto el 10 de diciembre de 2024. Ahora bien, son los tribunales los que gozan de facultad para interpretar las leyes y la Constitución. *Íd.*

Por lo tanto, al revisar una actuación de una agencia administrativa el criterio rector es la razonabilidad. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan,* supra. De manera que, procede la revisión judicial cuando el organismo administrativo haya

---

[10] Véase, además, *Jusino Rodríguez v. Junta de Retiro del Gobierno de Puerto Rico,* 2024 TSPR 138, resuelto el 26 de diciembre de 2024.

actuado de forma arbitraria, ilegal, irrazonable o que haya abusado de su discreción. *Íd.* A tono con lo anterior, la Sección 4.5 de la LPAU, 3 LPRA sec. 9675, y la jurisprudencia interpretativa limitan la revisión judicial a tres (3) aspectos: (1) si es apropiado el remedio concedido; (2) si las determinaciones de hechos están basadas en evidencia sustancial; (3) si las conclusiones de derecho fueron correctas. *Íd.*

Como vemos, al ejercer su facultad revisora, los tribunales no pueden descartar de forma absoluta el dictamen administrativo sin antes haber examinado la totalidad del expediente y haber determinado que la agencia actuó irrazonablemente al ejercer su discreción administrativa. *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra. Al mismo tiempo, el Tribunal Supremo ha resuelto con igual firmeza que, los tribunales no podemos imprimirle un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o simplemente contrarias a derecho. *Íd*; *Super Asphalt v. AFI y otro*, 206 DPR 803 (2021).

Por otro lado, la citada Sección 4.5 de la LPAU, *supra*, dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". *Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros*, supra; *Otero Rivera v. Bella Retail Group, Inc. y otros,* 2024 TSPR 70, resuelto el 24 de junio de 2024. Ahora bien, cuando el razonamiento de la agencia sea incompatible o contrario al propósito y a la política pública del estatuto interpretado, los tribunales tienen libertad absoluta de descartar las conclusiones de dicho organismo administrativo, en aras de obtener un resultado sensato, lógico y razonable. *Otero Rivera v. Bella Retail Group, Inc. y otros,* supra.

De otra parte, si al examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en

evidencia sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Hernández Feliciano v. Mun. Quebradillas,* 211 DPR 99 (2023).

### B. La doctrina de la cosa juzgada y el impedimento colateral

La doctrina de cosa juzgada aplica cuando existe una primera sentencia válida; que adjudicó la controversia en sus méritos; que advino final y firme; con la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron; y que el remedio solicitado sea análogo al previamente reclamado. *Figueroa Santiago et als. v. ELA*, 207 DPR 923, 933 (2021). La referida doctrina responde tanto al interés del Estado a que se les ponga fin a los litigios para que así no se eternicen las cuestiones judiciales, como a la deseabilidad de que no se someta en dos ocasiones a un ciudadano a las molestias que supone litigar la misma causa. *Ortiz Matías et al. v. Mora Development,* 187 DPR 649, 654-655 (2013).

En cuanto al requisito de identidad entre las cosas, basta con que se refiera al mismo asunto, independientemente de que uno se aborde totalmente y el otro solo parcialmente. *Acevedo v. Western Digital Caribe, Inc.*, 140 DPR 452, 464 (1996). De otra parte, la identidad entre las causas se logra establecer cuando se deduce que, tanto en el pleito anterior como en el que se invoca la excepción de cosa juzgada, las acciones ejercitadas implican un mismo motivo o razón de pedir: si los hechos y fundamentos de las peticiones son los mismos en lo que afecta la cuestión planteada. *Beníquez et al. v. Vargas et al.,* 184 DPR 210, 223 (2012).

Análogamente, el impedimento colateral por sentencia, por constituir una modalidad de la cosa juzgada, protege a los litigantes de tener que defenderse o de probar su reclamación en repetidas ocasiones sobre una misma controversia. *Presidential v. Transcaribe,* 186 DPR 263, 276 (2012). Lo antes, con el objetivo de promover la economía procesal y judicial, evitar litigios innecesarios y dictámenes inconsistentes. *Íd.* Sin embargo, distinto a la cosa juzgada, la aplicación del impedimento colateral por sentencia no requiere la identidad de las causas. *Íd.* Entiéndase que, la referida defensa puede invocarse, aunque la razón de pedir en la demanda actual no sea la misma que en la reclamación anterior. *Íd.*

Sobre cuándo aplica el impedimento colateral por sentencia nuestro más Alto Foro dictaminó que: "surte efectos cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y se determina mediante sentencia válida y final y tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén envueltas causas de acción distintas." *Íd.*, pág. 277. Esta doctrina puede exponerse de forma defensiva u ofensiva. En la modalidad defensiva, quien presenta la defensa es la parte demandada para impedir que la parte demandante litigue nuevamente un asunto previamente presentado y que perdió en un pleito anterior en contra de otra parte. *P.R. Wire Prod. V. C. Crespo & Assoc.,* 175 DPR 139, 153 (2008). En cuanto a la segunda modalidad, quien presenta la defensa es la parte demandante para impedir que la parte demandada re litigue un asunto presentado y sobre el cual no prevaleció en un pleito anterior en contra de otra parte. *Íd.* En ambos escenarios, la parte afectada por la interposición del impedimento colateral ha litigado y ha perdido el asunto en el pleito anterior. *Íd.*

Ahora bien, es importante apuntalar que, la doctrina de cosa juzgada es una de las defensas afirmativas que enumera la Regla

6.3 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 6.3, y a esos efectos dispone que, debe formularse de manera clara, expresa y específica al responder una alegación o, de lo contrario, se tiene por renunciada. *Presidential v. Transcaribe*, supra, pág. 281, citando a *Olmeda Nazario v. Sueiro Jiménez,* 123 DPR 294 (1989). Por lo tanto, de no levantar la defensa afirmativa de manera oportuna, la parte no puede plantearla en ninguna otra etapa posterior del proceso judicial. *Íd.*, págs. 285-286. Además, los tribunales no pueden levantar defensas afirmativas *motu proprio* cuando las partes son quienes las han renunciado. *Íd.*, pág. 284.

### C.

La Ley Núm. 161-2009, según enmendada, conocida como la *Ley para la Reforma del Proceso de Permisos de Puerto Rico* (Ley Núm. 161-2009),[11] fue creada a los fines de establecer el marco legal y administrativo que regirá la solicitud, evaluación, concesión y denegación de permisos por el Gobierno de Puerto Rico. Mediante la aprobación de esta ley se creó la OGPe, como entidad encargada de la evaluación, concesión o denegación de determinaciones finales y permisos relativos al desarrollo y uso de terrenos. Cónsono con lo anterior, el 16 de junio de 2023, se adoptó el Reglamento Núm. 9473, titulado *Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios* (Reglamento Conjunto de 2023).

El Art. 1.5 de la antes citada ley, la cual, en lo que nos concierne, dispone lo siguiente:

(14) *Consulta de ubicación.* - Es el procedimiento ante la Oficina de Gerencia de Permisos o los Municipios Autónomos con Jerarquía de la I a la V, a los cuales se le haya delegado dicha facultad por medio del Convenio de Transferencia, para que evalúen, pasen juicio y tomen la determinación que estimen pertinente sobre propuestos usos de terrenos que no son permitidos ministerialmente y que no pueden considerarse mediante otro mecanismo. En áreas no calificadas incluye propuestos usos de terrenos que por su

---

[11] 23 LPRA sec. 9011 *et seq.*

naturaleza y complejidad requieran un grado mayor de análisis.

[...]

(26) *Discrecional.* - Describe una determinación que conlleva juicio subjetivo por parte de la Junta Adjudicativa, del Secretario Auxiliar o un Municipio Autónomo con Jerarquía de la I a la V sobre la forma en que se conduce o propone una actividad o acción. Éstos utilizan su conocimiento especializado, discreción y juicio para llegar a su determinación, ya que esta determinación considera otros asuntos además del uso de estándares fijos o medidas objetivas. El Secretario Auxiliar o el Municipio Autónomo con Jerarquía de la I a la V, puede utilizar juicios subjetivos discrecionales al decidir si una actividad debe ser realizada o cómo debe realizarse.

[...]

(48) *Ministerial.* - Describe una determinación que no conlleva juicio subjetivo por parte de un funcionario público o Profesional Autorizado sobre la forma en que se conduce o propone una actividad o acción. El funcionario o Profesional Autorizado meramente aplica los requisitos específicos de las leyes o reglamentos a los hechos presentados, pero no utiliza ninguna discreción especial o juicio para llegar a su determinación, ya que esta determinación involucra únicamente el uso de estándares fijos o medidas objetivas. El funcionario no puede utilizar juicios subjetivos, discrecionales o personales al decidir si una actividad debe ser realizada o cómo debe ser realizada. Por ejemplo, un permiso de construcción sería de carácter ministerial si el funcionario sólo tuviera que determinar si el uso es permitido en la propiedad bajo los distritos de calificación aplicables, si cumple con los requisitos de edificabilidad aplicables (e.g., Código de Construcción) y si el solicitante ha pagado cualquier cargo aplicable y presentado los documentos requeridos; el Reglamento Conjunto de Permisos contendrá una lista en la que se incluyan todos los permisos que se consideran ministeriales. (Énfasis nuestro).

La Ley Núm. 161-2009, *supra,* reconoce que podrá emitirse un permiso de uso de forma automática cuando un Ingeniero o Arquitecto Licenciado al amparo de la Ley Núm. 135 de 15 de junio de 1967, según enmendada, conocida como "Ley de Certificación de Planos o Proyectos", certifique lo siguiente:

1) que el uso solicitado es permitido en la calificación que ostenta el predio; 2) que cumple con los parámetros del distrito de calificación; 3) que cumple con los requerimientos de prevención de incendios y salud ambiental y 4) cualquier otro requisito que se disponga mediante Reglamento.[12]

De otra parte, el Art. 9.9 de la Ley Núm. 161-2009, *supra,* expresamente excluye de la obligación de la instalación de un rótulo

---

[12] 23 LPRA sec. 9018o.

de presentación las solicitudes para la expedición de un permiso ministerial.[13]

El Art. 15.1 de la Ley Núm. 161-2009, *supra*, le ordena a la Junta de Planificación, que, con la colaboración de la Oficina de Gerencia de Permisos, promulgue un Reglamento Conjunto para establecer y aplicar, entre otros asuntos, "la evaluación y expedición de determinaciones finales, permisos y recomendaciones relacionados a obras de construcción y uso de terrenos".[14]

En el inciso (d) de la sección 2.2.1.3 del Reglamento Conjunto de 2023, se reconoce que los permisos ministeriales se otorgarán para los usos específicamente permitidos en cada distrito y siempre tienen que cumplir cabalmente con varios parámetros, a saber: (1) calificación; (2) usos; (3) altura; (4) tamaño del solar; (5) densidad; (6) área de ocupación; (7) área bruta de piso; (8) patios (delantero, laterales y posterior); (9) espacios de estacionamientos, y (10) área de carga y descarga.

Conforme al inciso (c) de la sección antes citada, los permisos de esta naturaleza se expedirán "**únicamente cuando la estructura o uso para lo que se solicite el permiso estén en completa armonía y conformidad con las disposiciones de este Reglamento".**

También, la Sec. 2.2.3.2 del Reglamento Conjunto de 2023, establece una lista de los proyectos que requieren una consulta. En específico, se requiere la presentación de una consulta de ubicación en las siguientes instancias:

> a. Propuestos usos de terrenos que no son permitidos ministerialmente por la reglamentación aplicable en áreas calificadas.
>
> b. Proyectos en los que se propone una densidad o intensidad mayor a la que permite el distrito en que ubica y no cumplen con el uso permitido en el distrito.

---

[13] 23 LPRA sec. 9019h.
[14] 23 LPRA sec. 9025.

c. Propuestos usos de terrenos de carácter regional, subregionales y suprarregionales.

d. Propuestos usos de terrenos que por su naturaleza o intensidad requieren una ubicación especial o particular para atender situaciones especiales, tales como proyectos industriales como procesamiento de material de corteza terrestre, estaciones de trasbordo o de disposición final de desperdicios sólidos, entre otros.

e. Toda mejora pública excluyendo las transacciones de terrenos públicas exceptuando aquéllas que se declaran exentas mediante resolución por la JP o aquellas incluidas en la Regla 2.2.8 de este Reglamento Conjunto.

f. Proyectos en los que se propone una densidad o intensidad mayor a la que permite el distrito en que ubica o requieren un diseño particular para atender situaciones especiales, pero que no hay un distrito específico que tenga los parámetros necesarios.

g. **Requerirán la presentación de consulta los proyectos en los que se proponga la construcción de una estructura que no satisfaga los requisitos de este Reglamento** o el Código de Construcción adoptado por la OGPe en cuanto a parámetros de construcción y que, debido a la condición del solar, la ubicación especial o el uso particular, confronte una dificultad práctica y amerite una consideración especial, **siempre que no se cree un perjuicio a las propiedades vecinas.**

Además, el Capítulo 3.7 del Reglamento Conjunto de 2023, dispone lo relacionado con los permisos únicos, los cuales, según los incisos (a) y (b) de la Sec. 3.7.1.1, consolidan e incorporan varios trámites en una solicitud y deben obtenerse para todo edificio nuevo o existente con usos no residenciales.

De acuerdo con la Sec. 3.7.1.9 del Reglamento Conjunto de 2023, un permiso de esta índole puede ser expedido de forma automática por la OGPe o un Municipio Autónomo con Jerarquía de la I a la III cuando un Ingeniero o Arquitecto Licenciado certifique que:

1. que el uso solicitado es permitido en la calificación que ostenta el predio;

2. que cumple con los parámetros del distrito de calificación;

3. que cumple con los requerimientos de prevención de incendios y licencia sanitaria;

4. que cumpla con la exclusión categórica o cumplimiento ambiental aprobado:

5. que presente una recomendación de la Entidad Gubernamental Concernida en la cual se disponga que el permiso de uso para la actividad propuesta **cumple con los**

**requisitos aplicables y contenidos en la reglamentación o ley que aplican la operación o actividad propuesta**.

Resulta necesario resaltar lo relacionado con los distritos clasificados como Comercial Turístico y Comercial Turístico Liviano en el Reglamento Conjunto de 2023. La Sec. 6.1.12.1 Comercial Turístico (C-T), establece como propósitos para este tipo de distrito que;

a. Este distrito comercial en las Zonas de Interés Turístico se establece para promover el desarrollo ordenado y estético, para clasificar áreas comerciales y residenciales de intensidad intermedia y semi-alta.

b. Los usos comerciales permitidos sirven de apoyo, complementan o suplen las necesidades de las comunidades y visitantes sin que las actividades comerciales perjudiquen de forma significativa el carácter turístico que debe prevalecer en la zona.

c. Por su localización y disponibilidad de infraestructura incluye terrenos que pueden desarrollarse o se han desarrollado a una muy alta intensidad.

Finalmente y atinente al recurso ante nos, la Sec. 6.1.12.2 ilustra lo referente a los usos permitidos en el referido distrito.

a. Los usos a permitirse en este distrito serán compatibles con los propósitos del mismo y con las disposiciones de esta Regla.

b. Usos comerciales o de servicios se permitirán en los primeros dos niveles.

c. **Sobre el segundo nivel se permitirán usos residenciales y de hospederías. (Énfasis nuestro.)**

### III.

En el primer señalamiento de error, la señora Rivera Montañez aduce que, erró la OGPe al no aplicar la doctrina de cosa juzgada en su modalidad de impedimento colateral por sentencia. Arguye que, ya se adjudicó que la construcción que LHEE, Inc. solicita legalizar, se hizo sin que se hubiera obtenido el correspondiente permiso de construcción. La parte recurrida sostiene que las determinaciones judiciales anteriores, no resultan vinculantes porque solo se limitan a determinar sobre la existencia del permiso de construcción y no versa sobre la legalidad del proyecto y el cumplimiento del

Reglamento Conjunto. Además, reiteran que el permiso se emitió de forma ministerial y se presume correcto.

Al examinar los pronunciamientos judiciales anteriores producto de las dos demandas instadas al amparo del Art. 14.1 de la Ley Núm. 161-2009, *supra*, resulta evidente que, a las fechas de las vistas evidenciarias celebradas, el TPI concluyó que LHEE, Inc., no tenía un permiso de construcción para colocación de tres vagones por encima de la segunda planta de su negocio, constituyéndose así, un tercer nivel. En ambos pronunciamientos se destaca que la obra para uso comercial es sobre el segundo nivel o en un tercer nivel.

Si bien es cierto que, en dichos litigios comparecieron la señora Rivera Montañez y LHEE, Inc. y no la OGPe, ello no niega que la causa y objeto de acción versa sobre el mismo proyecto y la misma controversia. De otra parte, al comparar la composición de las partes para determinar si hay identidad de partes, reconocemos que las partes de ambos litigios y procesos administrativos siempre han sido LHEE, Inc. y la señora Rivera Montañez. La participación de la OGPe fue como agencia adjudicadora y como agencia recurrida ante esta Curia. Ello, porque el recurso de revisión apelativa permite a discreción del foro judicial, la participación de la OGPe, como agencia recurrida. Por tanto, descartar la postura de la recurrente sobre este planteamiento, únicamente porque la OGPe no participó como parte en el litigio ante el TPI, no nos persuade. Resulta evidente que la ley que permite el *injunction* estatutario, invocada por la recurrente, precisamente es la Ley 161-2009 que versa el proceso de permisos, las funciones de la OGPe y la intervención de los tribunales mediante el *injunction* estatutario permitido mediante el Artículo 14.1, supra. En su consecuencia, esta Curia toma conocimiento que, mediante un debido proceso de ley, el foro primario adjudicó la prueba presentada sobre la misma controversia entre las mismas partes y consignó determinaciones de hechos, de

las cuales constan en el expediente administrativo. En su consecuencia ante dicha premisa, nos corresponde justipreciar si procede la aplicación de cosa juzgada a este caso o impedimento colateral por sentencia.

Como se sabe, el impedimento colateral por sentencia, por constituir una modalidad de la cosa juzgada, protege a los litigantes de tener que defenderse o de probar su reclamación en repetidas ocasiones sobre una misma controversia. *Presidential v. Transcaribe,* 186 DPR 263, 276 (2012). Lo antes, con el objetivo de promover la economía procesal y judicial, evitar litigios innecesarios y dictámenes inconsistentes.

Sobre cuándo aplica el impedimento colateral por sentencia nuestro más Alto Foro dictaminó que: "surte efectos cuando un **hecho esencial** para el pronunciamiento de una sentencia se dilucida y se determina mediante sentencia válida y final y tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén envueltas causas de acción distintas." *Íd.*, pág. 277.

Ponderada la referida normativa antes expuesta, colegimos que, le asiste la razón a la parte recurrida, en cuanto a la inaplicabilidad de la doctrina de cosa juzgada, toda vez que, en ambas instancias la cuestión última sobre la legalidad de la construcción siempre quedó sujeta a la posibilidad de que LHEE, Inc., procediera a presentar una nueva solicitud para así agotar nuevos remedios ante la OGPe.

Ahora bien, lo antes no implica que procede ignorar el reclamo de la recurrente en torno a las determinaciones de hecho consignadas por el foro primario de manera final y firme dentro de un proceso establecido por el legislador mediante la *Ley para la Reforma de Permisos de Puerto Rico.* Añádase a ello que, nos resulta persuasivo que los dictámenes basados en los hechos consignados

por el TPI resultan entre las mismas partes sobre la misma controversia precisamente, autorizado por la Ley 161-2009, *supra*, que resultan vinculantes a la OGPe. Conforme la normativa antes expuesta, corresponde aplicar la modalidad de impedimento colateral para proteger a los litigantes de probar un hecho esencial en repetidas ocasiones. En su consecuencia, colegimos que, por impedimento colateral por sentencia no procede volver a litigar sobre en qué consiste el proyecto y su ubicación.

Surge de los referidos dictámenes los siguientes hechos esenciales a saber: que LHEE, Inc. realizó una obra que se construyó sin un permiso de construcción en el tercer nivel o sobre encima del segundo nivel de la estructura existente para propósitos de expandir un negocio de venta de comida y bebidas alcohólicas con la colocación de tres vagones en dicha área para una barra, baño y cocina. Lo antes, resulta ser medular para atender el segundo señalamiento de error.

En el segundo error señalado, debemos determinar si la OGPe actuó correctamente al validar el permiso otorgado por la OGPe, que permitió la construcción de tres vagones para uso comercial sobre el segundo nivel de una estructura en un Distrito Comercial Turístico Liviano (CT-L). En particular, la recurrente arguye que, la construcción o la colocación de los tres vagones es un asunto discrecional que requiere una solicitud de variación y una consulta de ubicación. Añade que, también exigía una resolución que incluyera determinaciones de hechos y conclusiones de derecho. La parte recurrida plantea que el permiso de construcción emitido fue el resultado de un proceso ministerial que goza de presunción de corrección.

En aras de revisar la corrección del análisis y las conclusiones de la agencia recurrida, procede destacar que, de una lectura del inciso (c) de la Sección 6.1.12.2 se desprende una limitación en el

uso permitido sobre el segundo nivel de una estructura ubicada en dicho distrito. Dicha disposición reglamentaria sobre Usos dispone lo siguiente:

   a. Los usos a permitirse en este distrito serán compatibles con los propósitos del mismo y con las disposiciones de esta Regla.
   b. Usos comerciales o de servicios se permitirán en los primeros dos niveles.
   **c. Sobre el segundo nivel se permitirán usos residenciales y de hospederías. (Énfasis nuestro.)**

De un examen sosegado del expediente surge que, el proponente del proyecto, primero, construyó su obra sobre el segundo nivel de la propiedad sin obtener el debido permiso requerido en ley y luego, solicitó un permiso para legalizar dicho proyecto que consiste en la ubicación de tres vagones por encima de la segunda planta de la propiedad. La propiedad en controversia incluye dos plantas, un sótano y un subsótano que, a su vez, se dedica al negocio de venta de comida y bebidas alcohólicas. Lo antes, no está en controversia. Tampoco está en controversia que los tres vagones (cuyo propósito es para el uso accesorio de un baño, barra y cocina) se ubicaron sobre el segundo nivel, lo cual coincide con la ventana y sala de la recurrente, quien vive junto a sus hijos en la propiedad colindante. Es decir, el nivel de la construcción que se pretende legalizar queda al nivel de otra propiedad colindante que tiene un uso residencial.

Siendo una construcción dentro de un distrito comercial turístico que permite el uso comercial, la agencia recurrida determinó que, el trámite a seguir, para considerar los méritos de la solicitud, es de índole ministerial por tratarse de un permiso de construcción en ese distrito. En un trámite ministerial, la agencia se circunscribe a evaluar los documentos sometidos por el profesional autorizado en representación del solicitante (que se presumen correctos). Además, la agencia confirma si se cumplen los requerimientos en ley, sin consignar hechos y derecho. Ahora bien,

lo antes no impide que, la agencia concernida evalúe y aplique la totalidad de las disposiciones del Reglamento aplicables al cuadro fáctico ante su consideración. Es decir, el proceso ministerial no es una defensa para omitir el cumplimiento del deber de la agencia de hacer cumplir sus propios reglamentos. Nos explicamos.

En este caso, no se desprende del expediente fundamento alguno que permita ignorar lo establecido en la Sección 6.1.12.1 inciso (c). Al justipreciar la totalidad de las circunstancias de la presente causa se desprende que, el análisis de la agencia recurrida se limita a la aplicación de la Sección 6.1 y en particular destaca la Sección 6.1.12.2 inciso (b) que establece que, los usos comerciales o de servicios se permitirán en los primeros dos niveles. De hecho, la agencia recurrida se refiere al área de la obra de forma inconsistente y no toma conocimiento de los hechos incontrovertidos y establecidos en dos procesos judiciales que establece de forma inequívoca que la colocación de tres vagones para barra, cocina y baño se ubica sobre el segundo nivel constituyéndose así en el tercer nivel. Añádase a ello que, la agencia impugnada tampoco abunda, ni señala que, en la misma disposición reglamentaria, se establece el uso que se permite sobre el segundo nivel es uno residencial o de hospedería, lo cual no incluye el uso comercial. Además, observamos que la agencia recurrida ignoró que los permisos de esta naturaleza se expiden cuando la estructura esté "en completa armonía y conformidad con las disposiciones de este reglamento." Véase Sección 2.2.1.3.(c) del Reglamento Conjunto de 2023. Al ignorar la totalidad de las disposiciones reglamentarias en el análisis requerido se incumple las normas de hermenéutica que guían la correcta revisión administrativa como cuestión de derecho.

Recientemente el Tribunal Supremo en *Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros*, supra, destacó el alcance de la revisión judicial de

determinaciones administrativas. Citando lo resuelto por el Tribunal Supremo de Estados Unidos en *Loper Bright Enterprises v. Raimondo*, ___ U.S. ____, 144 S.Ct. 2244, 219 L.Ed.2d 832 (2024), el Alto Foro expuso que los tribunales deben ejercer un juicio independiente al decidir si una agencia ha actuado dentro del marco de sus facultades estatutarias. Los tribunales no tienen que darle deferencia a la interpretación de derecho que haga una agencia simplemente porque la ley es ambigua. A esos efectos, el Alto foro -tanto en *Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros*, supra, como en otros pronunciamientos judiciales- hace referencia a la hermenéutica legal.

La hermenéutica legal es el proceso de interpretar las leyes; es decir, auscultar, averiguar, precisar y determinar cuál ha sido la voluntad legislativa. *Class Fernández v. Metro Health Care Management System, Inc.*, 2024 TSPR 63, resuelto el 17 de junio de 2024. Este método de interpretación se utiliza, no solamente en la interpretación de estatutos, sino también, en la de los contratos, testamentos, **reglamentos administrativos** y cualquier otro documento. R. E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed., San Juan, Pubs. JTS, 1987, Vol. I, pág. 241. Véase, además, *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 717, 738 (2012). Ante esto, resulta necesario que las diversas secciones de un estatuto se deben interpretar conjuntamente y no de forma aislada con el propósito de lograr una interpretación lógica y razonable de la intención legislativa. *Romero Lugo v. Cruz Soto*, supra, en la pág. 993; *Romero Barceló v. ELA*, 169 DPR 460, 477 (2006) citando a *Mato v. Junta Examinadora*, 165 DPR 741, 748-749 (2005). Es decir, que las leyes se consideran como un todo para determinar el significado de cada parte. *Romero Lugo v. Cruz Soto*, supra. Esto es así porque, los tribunales estamos

autorizados a interpretar las leyes, [así como los reglamentos] no limitándose, cuando éstas no son claras o concluyentes sobre un punto particular; cuando el objetivo es el de suplir una laguna en el estatuto; o cuando la justicia lo requiera con el propósito de mitigar los efectos adversos de la aplicación de una ley a una situación en particular. *Brau, Linares v. ELA*, 190 DPR 315, 340 (2014).

A esos efectos, resulta evidente que, nos corresponde revisar las determinaciones de la agencia recurrida sin abdicar nuestra función independiente de revisar las conclusiones de derecho en todos sus aspectos. De ahí resulta evidente que nos corresponde justipreciar si la agencia recurrida evaluó y aplicó correctamente todas las disposiciones de su propio reglamento aplicables a la presente causa.

Hemos evaluado sosegadamente las posturas de las partes con el beneficio del expediente y concluimos que, a la recurrente le asiste la razón al sostener que el inciso (c) del citado Artículo 6.1.12.2 resulta aplicable a la presente causa y no fue considerado por la agencia recurrida. Es decir, el inciso (c) de la Sección 6.1.12.2 debió ser resaltado y aplicado a la controversia, dado que, establece que "sobre el segundo nivel se permitirán usos residenciales y de hospederías". Lo antes, en armonía con el inciso (b) de la misma sección, nos lleva a concluir que, el propósito reglamentario es delimitar el uso entre el segundo nivel y lo que se construya sobre el mismo. Dicha ubicación de la obra fue identificada en ocasiones por la agencia así como por el TPI como el tercer nivel o el área sobre el segundo nivel.

De esta forma se colige que, el proponente del proyecto solicita un uso no contemplado por el Reglamento Conjunto para colocar vagones (dedicados al uso de barra, baño y cocina) en un nivel sobre la segunda planta que constituye un tercer nivel. Nuevamente la ubicación del proyecto de construcción no está en controversia. En

su consecuencia, ante un uso comercial vedado por el Reglamento no procede emitir el permiso de construcción para uso comercial sobre el segundo nivel sin un proceso de variación de uso o consulta de ubicación. Sobre este particular, la parte recurrida, así como la OGPe parecen argumentar que dentro de un proceso ministerial no procede aplicar la reglamentación vigente en todo su alcance porque se presume el cumplimiento con las normas vigentes. Todo lo contrario, la normativa antes reseñada destaca que en la revisión administrativa no procede soslayar la corrección de las conclusiones de derecho que siempre debe contemplar la correcta aplicación de la ley y el reglamento aplicable. De hecho, la correcta aplicación de la ley y los reglamentos de rigor no debe variar si se utiliza un proceso ministerial o discrecional.

En este caso, aun cuando se reconoce que, el uso en el Distrito Comercial Turístico (C-T) y Comercial Turístico Liviano (CT-L) permite el uso propuesto, la reglamentación vigente establece un límite cuando trata de un proyecto o construcción por encima de una segunda planta existente en dicho distrito. Hasta la segunda planta se permite uso comercial y por encima para uso residencial o de hospedería. La obra cuyo permiso se impugna es para uso comercial lo cual no cumple los parámetros de ubicación establecida en la citada disposición reglamentaria. La agencia recurrida debió reconocer que, su propio reglamento establece una política pública sobre la planificación y construcción en este distrito que solo permite uso comercial hasta un segundo nivel y no por encima en un tercer nivel. El Reglamento Conjunto incluye disposiciones y procesos aplicables que obligan a la agencia velar que no se cree un perjuicio a las propiedades vecinas de las estructuras que presuntamente no satisfacen los requisitos allí establecidos. Los litigantes tienen derecho a que se haga valer lo que el propio reglamento dispone. La antes citada sección del Reglamento

Conjunto, sólo contempla la construcción de hospederías y uso residencial en un tercer nivel o el área sobre el segundo nivel en las propiedades sitas en ese distrito, y en ausencia de otro tipo de proceso administrativo, no se permite otra cosa. La letra de la citada disposición reglamentaria es clara y debió ser aplicada al cuadro fáctico ante nos.

Como se sabe, las agencias gubernamentales tienen la obligación de cumplir y hacer cumplir sus propios reglamentos. En fin, al entender sobre la presente causa, concluimos que no procede atribuirle una deferencia automática a la determinación administrativa impugnada. Aplicados los mecanismos interpretativos judiciales reconocidos por el Tribunal Supremo en la jurisprudencia antes citada, colegimos que se cometió el segundo error señalado y procede la revocación del dictamen administrativo impugnado.

## IV.

Por todo lo antes revocamos el dictamen administrativo recurrido y, en su consecuencia, dejamos sin efecto el permiso de construcción emitido a favor de LHEE, Inc. H/N/C Pa´l 24 Steakhouse & Tapas objeto del presente recurso. Lo antes previsto, no prejuzga cualquier solicitud ulterior ante la agencia y/o el foro judicial que presenten las partes, si alguna.

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. El Juez Rodríguez Flores disiente de la Sentencia en Reconsideración y reitera su postura expresada en la Sentencia del 28 de febrero de 2025.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones